MEMPHIS & CHARLESTON RAILROAD CO. v. M. J. JOBE.

1. RAILROADS. *Personal injury. Contributory negligence. Instruction.*

  In an action against a railroad company by one injured at a street-crossing by a train running at an unlawful rate of speed, where there is a controversy of fact as to whether plaintiff was guilty of contributory negligence, it is error to instruct that, although the jury may believe the plaintiff was guilty of negligence in approaching the track, still, unless this negligence was in whole or in part the cause of the injury, the verdict should be for plaintiff.

2. SAME. *Negligence of plaintiff. Injury. Causal connection.*

  If in such case the plaintiff negligently went on the track in front of the rapidly approaching train, where he was injured, there was necessarily a causal connection between his negligence and the injury, and he could not recover. The jury could not find him thus guilty of negligence, and yet find that the negligence did not contribute to the injury, hence the charge was improper.

FROM the circuit court of Alcorn county.
HON. LOCK E. HOUSTON, Judge.

Appellee recovered judgment, in the court below, against the Memphis &. Charleston Railroad Company on account of personal injuries received by him at the intersection of defendant's railroad and Franklin street, in the town of Corinth. On the trial, the evidence showed substantially the following facts: The point where the injury occurred is near the center of the town, and is one of the most prominent crossings. The street runs north and south, and the railroad east and west. The plaintiff was in his wagon, driving a gentle team south along the street, when he was struck, at the crossing, by a passenger-train of defendant that was going west. The evidence is conflicting as to the rate of speed at which the train was running, some of the witnesses putting it at twenty to twenty-five miles and hour, and some as low as ten to twelve miles an hour. The plaintiff went down a slight

grade just before reaching the track. On either side of the street was an embankment six or seven feet high. On the east side there was a row of houses and shrubbery, which extended to the right of way on the north side of the railroad. Where the street crossed the railroad, there was a side-track on the north and one on the south side of the main line. On the north side-track, just east of the crossing, there were several box-cars. Owing to these facts, the view of an approaching train from the east was somewhat obstructed. The plaintiff testified that he heard a noise as he approached the crossing, but, owing to the location of the houses, this sound seemed to come from the west. In order to have a clear view up the main line eastward, it would be necessary for one to be within twenty-five or thirty feet of the track. The testimony tended to show that one standing in the street, thirty-six feet from the center of the track, could see the smoke-stack of an approaching locomotive more than two hundred feet to the east. Notwithstanding the box-cars and the other obstructions, plaintiff testified that he could have seen the smoke-stack of a locomotive as far up as the jail, which was about two hundred feet from the crossing. He was at the time a stout, active man, about thirty-five years old, and was in the habit of crossing the track at that point. On this occasion he undertook to cross when he knew it was about train time. He was driving two horses, originally good, but poor and broken down. The harness consisted of plow gear, with no breeching to hold the wagon back in going downhill. He was sitting on a barrel of flour, with his feet resting on the wagon floor. His brother was walking along by the side of the team. When he reached the descent in the street leading to the crossing, he turned the horses to the left, on some rough ground, to keep the wagon from running against them, and there stopped for a second, as he testified, long enough to look and listen. He was then thirty or forty feet from the crossing. He looked up the railroad, eastward, and saw no train, and then started up the ascent to the

track, turning his head as he did so to look down the rail-road, westward, and in that direction he saw a locomotive, and then, he testified, before he had time to look the other way, the horses' heads were somewhere about the track, when he discovered that the train was coming on him from the east. He then turned loose, and made an effort to save himself, but was struck and injured. When he first saw the engine, it was about fifty feet away. His brother testified that he was walking a little in advance of plaintiff's team, and was between the north switch and the main track when he saw the approaching train at the upper crossing, two hundred feet to the east, and called out to plaintiff, "Look out! there is the train!" He made a leap for the horses, intending to back them off the track. The wagon was then on the switch. He also testified that plaintiff did not stop the horses, or try to do so; that if he had stopped them he would not have been hurt, and that, seeing it was too late, he abandoned his effort to keep the horses off the main track, and ran behind the wagon to escape. This witness testified that, when he warned plaintiff of the train, he could not have stopped the wagon.

The effort of defendant was to show, by the testimony, that the wagon could have been stopped after plaintiff's brother gave the alarm; that it was then going up a slight grade, and that it was the fault of plaintiff that it was not stopped before the track was reached. There was testimony tending to show that the noise of the running train could have been heard three hundred or four hundred feet away from the crossing, and that the plaintiff could have seen the locomotive at least two hundred feet away. The whistle was blown at the signal-point about a mile east of the station, but the evidence was conflicting as to whether the bell was rung or any danger-signals given at the time of or just before the collision. The employes in charge of the train testified that, on seeing plaintiff's dangerous position, the engine was reversed, the air-brakes applied, and every thing possible was done to avoid the injury.

The court refused a peremptory charge for defendant, and gave a large number of instructions for each side, among the number being the thirteenth, asked by the plaintiff, which is set out in the opinion of the court. Verdict and judgment in favor of plaintiff for $2,500. Motion for new trial overruled. Defendant appeals. The opinion contains a further statement of the case. As the decision turns upon the granting of a single instruction, it is unnecessary to set out the other instructions or to make any reference to numerous questions of law and fact presented by the record and discussed by counsel.

*Inge & Burge,* for appellant.

It is negligence which will prevent recovery, for a person to attempt to cross a railroad track without exercising his faculties to ascertain if there is danger. Sherm. & Redf. on Neg., § 485 and notes; 1 Redf. on Railways, § 133 and notes; 2 *Ib.*, 177; Sedgwick on Dam., 530; Beach on Con. Neg., 192 and notes; Patterson's Ry. Ac. L., § 178 and notes; 1 Rorer on Railroads, 532, 533 and notes; 2 Wood's Ry. L., 1302; *Railway Co.* v. *Cooper*, 68 Miss., 358; *Railroad Co.* v. *Mitchell*, 52 *Ib.*, 808; 95 U. S. 697; 19 Am. & Eng. R. R. Cas., 312, 326, 366.

· If, with the train in view or in hearing, a person undertakes to reach a crossing and get over by fast driving, it is negligence, and he cannot recover. Beach on Con. Neg., 198, 199; 77 Me., 538; 78 Pa., 219; *Railroad Co.* v. *Stroud*, 64 Miss., 784.

Trying to cross a track when a train is known to be due, and when the slightest delay in crossing would probably be fatal, is negligence, and the party cannot recover. 30 N. J. L., 604; 58 N. Y., 248; 28 Am. & Eng. R. R. Cas., 628.

The defendant's responsibility begun after the appellee was, or may have been, discovered on the track, unless negligence on the part of defendant's servants is shown in not having seen him there; and, further, if he was guilty

of negligence contributing to the injury, he must fail.    13
Am. & Eng. R. R. Cas., 639; 14 *Ib.*, 696; Beach on Con.
Neg., 209, 210, 215.

The mere fact that the train was running more than six
miles an hour does not make the defendant liable, even if
the signals were omitted, if the negligence of the plaintiff
contributed to the injury.    *Railroad Co.* v. *McGowan*, 62
Miss., 682; 14 Am. Ry. Rep., 123; 39 N. Y., 358; 10 Allen,
532; 64 Mo., 480; 44 Pa., 375; 4 Am. & Eng. R. R. Cas.,
579.

*Mayes & Harris*, on the same side.

It is clear that the plaintiff was guilty of contributory neg-
ligence, and for this reason he cannot recover.

The thirteenth instruction for plaintiff is faulty in two par-
ticulars: (1) It entirely ignores the question of plaintiff's
contributory negligence in stopping his team after he had
gotten on the track, and makes the issue turn wholly on the
manner of his approach.    (2) It also ignores the rather nec-
essary element of negligence on the part of the defendant,
and gives the plaintiff a verdict on two conditions, one of
which was that he was hurt, and the other that he was not
himself negligent.    We are aware that juries take that view
of such cases as this, but we believe that it has not yet re-
ceived the assent of the courts in their charges.    They in-
cline to hold that the defendant must be negligent in some
particular.

*M. H. Meeks* and *J. M. Boone*, for appellee,

Filed an elaborate brief, as to the question decided by the
court, making the following points:

The conclusion is inevitable that the train was running at
a dangerous and reckless rate of speed, and that the defendant
was guilty of gross negligence.    The plaintiff used due care
to avoid the injury.    He stopped to look and listen for the
train.    He did not venture on the track with an ungovern-

able team, but with a safe and gentle one. ·If he failed to observe ordinary care, and this failure was the cause of the injury, he was guilty of contributory negligence. But we submit that he used due care, and that, if he was guilty of any negligence whatever, it did not cause the injury; this resulted from the negligence and reckless conduct of the employes of defendant.

Two objections are raised to plaintiff's thirteenth instruction: (1) Because it ignores the question of contributory negligence of plaintiff while on the track. To this we reply, that, taken in connection with defendant's instructions, with which it is in perfect accord, it is unobjectionable. (2) Because it ignores the question of negligence on the part of the defendant, and makes liability depend on two conditions, one that the injury was done, and the other that the injured party was not negligent. This, we submit, is exceedingly hypercritical and technical. This is not a case of questioning the existence of negligence ·by the railroad company—as, of defective machinery, etc.—and contending that, although negligence may exist, the particular negligence is not the cause of injury; but the idea of the case and the contention of the parties is, that the injury complained of is the result of either the active negligence of the railroad company, or the contributory fault of appellee, and, hence, the objection does not apply. The language used in the instructions is not such as to mislead or confuse the jury, nor was there any conflict or contradiction, but the instructions were harmonious. The jury could not be deceived or misled by any charge that was given for the plaintiff below, especially when we take into consideration the charges for defendant. There is not a single question touching any charges for plaintiff that the court did not instruct the jury upon for defendant. If there was any error as to this, it was against the plaintiff. The question of negligence was fairly presented to the jury. Upon every ·material point there was a conflict of evidence, except as to the unlawful rate of speed.

This case is more favorable to plaintiff than was the case of *Fulmer* v. *Railroad Co.*, 68 Miss., 355. In that case the plaintiff was more subject to the charge of contributory negligence than is the plaintiff here. In that case the court said: "The evidence of the negligence of the deceased was not overwhelming and uncontroverted, and the case should have been given to the jury."

The court below heard the evidence, saw the witnesses and decided that the case was one which should be submitted to the jury, and the verdict has settled the controversy in favor of plaintiff. Can this court, under the rule laid down in the case above, say that the verdict is wrong? Will the court say that the negligence of plaintiff was overwhelming and uncontroverted? We think not.

The proof establishes beyond controversy the unlawful rate of speed. This, by all the authorities, fixes negligence on the railroad company. 2 Woods' Ry. L., § 1316 and notes; *Ib.*, § 1319 and notes.

Where a railroad company permits obstructions on its right of way so as to prevent the view of approaching trains, and neglects to give signals of danger, whereby a party attempting to cross the track is injured, the company is liable. Woods' Ry. L., § 1330 and authorities there cited; 1 Thompson on Neg., 406, 407, 423.

The plaintiff did all that prudence and caution required. The defendant not only violated the statute, but showed a reckless disregard of the rights of others.

COOPER, J., delivered the opinion of the court.

This case is another illustration of the danger of unnecessarily multiplying instructions. On this appeal we are confined to the consideration of the errors appearing in the instructions for the plaintiff, but we suggest that on the next trial counsel for both parties may, with full justice to the issue involved, reduce the number of charges requested.

Several of the instructions of the plaintiff are subject to

just criticism, but the voluminous and numerous charges for the defendant have probably cured their defects.

But the thirteenth instruction for the plaintiff is erroneous, and is not cured by any other. By that the jury was told that, "although they may believe from the evidence that the plaintiff, Jobe, was guilty of negligence in approaching the railroad at the time of the injury, still, unless they further believe from the evidence that this negligence was, in whole or in part, the cause of the injury, they will find for the plaintiff."

There was practically but one question for decision by the jury, which was whether the plaintiff was guilty of contributory negligence in going upon the track of the defendant in front of a rapidly approaching train, which was confessedly being run at a greater rate of speed than allowed by law within an incorporated town.

The whole evidence shows that, almost instantly after the plaintiff passed upon the road, he was struck by the train. It is impossible to conceive of an absence of causal connection between the negligence of the plaintiff in going on the track (if, in fact, he did negligently go thereon) and the injury he sustained. The whole question was whether he negligently went on the track in front of the train by which he was struck. If he did, that fact found by the jury ends the case, for, in the nature of things, it contributed directly to the injury. It cannot be true, under the uncontroverted evidence, that the jury could find that the plaintiff was guilty of negligence in going on the track, and yet also find that such negligence did not contribute to the injury. This, the thirteenth instruction virtually told the jury might be done, and this was erroneous.

*Judgment reversed.*