## SOUTHERN RAILWAY COMPANY *v.* HARDEN.

101　263
105　317
101　263
s107　380
101　263
116　783
101　263
119　149
101　263
124　359

1. In an action instituted for the recovery of damages for the commission of a mere negligent tort which involves no actual physical invasion of one's rights of person or property, but which consists in the omission to perform a *private duty* springing out of the relation of carrier and passenger, the breach of which results in damage to the person to whom that duty is owing, the law of trespass is not involved; and it is therefore error in such a case for the trial judge to give in charge to the jury that portion of section 3906 of the Civil Code, which provides, as follows : " either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff "; but upon the trial of such a case it is proper to give in charge to the jury that portion of the section of the code above referred to which precedes the words above quoted.
2. Other than as above indicated, no error was committed by the judge at the trial.

Argued April 20, — Decided May 21, 1897.

Action for damages. Before Judge Milner. Gordon superior court. February term, 1896.

Arnetis Harden sued the Southern Railway Company for $1,000 damages, alleging: On December 22, 1894, petitioner purchased from the defendant in Piedmont, Alabama, a ticket entitling her to be carried from that place to Reeves station, a point on the defendant's line of road in Gordon county, Georgia. In accordance with said contract defendant received her on board of its car and faithfully undertook and promised to carry her to said Reeves station and there safely deliver her; but in violation of its undertaking, and against her wish and protest, the defendant, through its agents and servants, wilfully, wrongfully and tortiously carried her past said Reeves station two miles. She is now old and feeble, being in her sixty-fifth year. When the train arrived at Oostanaula, it stopped only a very short time, and she was forced and hurried by defendant's servants off said car unaided and unassisted by the conductor or servants of defendant, and in getting off the car unassisted, received injuries in her side, back and arm, which caused her great pain and suffering for many days. She suffered greatly from fatigue, and was made sick and sore by exertion; all of which was caused by the negligence of the defendant and its agents. Said wrongs and injuries and grievances as aforesaid,

committed upon her by the defendant, were done without the fault of petitioner, but were caused by the negligence and wrong-doings of the defendant, its agents and employees. She was put off the cars at night and was forced to stay all night among strangers; and in getting home the next day she had to travel several miles further than she would have had to travel if defendant had put her off at Reeves station, where petitioner had a comfortable conveyance to carry her home that evening.

On the trial the jury rendered a verdict in favor of plaintiff for $300. The defendant made a motion for a new trial, which was overruled, and it excepted. The motion alleged that the verdict was contrary to law and evidence; and that the court erred:

In refusing to withdraw from the jury, upon motion of defendant's counsel at the commencement of plaintiff's evidence, the question as to whether plaintiff was injured in alighting from the train, as alleged in the fourth paragraph of her petition. "Movant insists that this motion should have been granted, the petition setting out two distinct causes of action, one a breach of the contract to convey plaintiff to Reeves station and safely deliver her there, the other being an alleged injury caused by negligence of defendant's agents in failing to assist plaintiff to alight from the train; the evidence showing, as defendant insists, that ample time was allowed plaintiff to disembark and that of her own choice she chose to assist herself, declining all assistance, that she failed to observe the light provided to light the steps and ground upon which she alighted, and fails to show that there was anything about plaintiff which suggested to defendant's agents that special assistance was needed by plaintiff."

In charging the jury: "In every tort there may be aggravating circumstances either in the act or the intention, and in that event the jury may give additional damages either to deter the wrong-doer from repeating the trespass or as compensation for the wounded feelings of the plaintiff"; and in adding, in immediate connection with the foregoing: "Look to the evidence and find the facts, and say whether or not there

was any bad faith or wilful misconduct on the part of the officers or agents of the company at the time she alighted from the train.   If you find there was any wilful violation of the contract or any bad faith on the part of the officers of and agents of the company, ʼeither in act or intention, why then she would be entitled to recover punitive damages." Movant insists that it was error to give any part of the two clauses of the charge above quoted to the jury; that there was no evidence to authorize or require such charge, or any charge, in regard to punitive damages.   There was no evidence that defendant's officers on the train treated plaintiff with any indignity, or otherwise than with politeness and civility, or that they treated her otherwise while she was disembarking from the train,—no wanton or wilful violation of the contract. Defendant's conductor informed plaintiff's escort (son) that he was sorry that he could not stop the train, that it was against his orders (this according to the son's testimony). The conductor testified that he did not decline to stop the train but made an effort to do so, but failed on account of failing to reach the engineer by the usual signal, because some part of the air-pipe was slightly obstructed.   Movant insists that these charges complained of injured the defendant.

The following appeared from the evidence:   The plaintiff's son purchased at Piedmont, Alabama, on December 22, 1894, a ticket from that place to Reeves station, Georgia, upon which the plaintiff took passage on the defendant's train, accompanied by her son and daughter.   On arriving at Rome the party remained there some hours, and then took a train of defendant's railroad, which would pass Reeves station. · According to the testimony of the plaintiff's son, he handed the tickets to the conductor on the latter train, and the conductor said there was no station there, and wanted to know who sold the tickets.   The witness replied, the agent at Piedmont.   The conductor then said: "He made a mistake.   There is no station there."   .Witness pleaded with him to let them off at Reeves station, but the conductor did not do so.   He told witness that he could not stop there.   They were carried beyond Reeves station to Oostanaula, which one of the plaintiff's witnesses testified was

two miles, and another four miles, from Reeves station. At Oostanaula they got off. No one came to help them off. The plaintiff was sixty-five years old, but, according to the testimony of her son, as well as that of the conductor, she was a healthy-looking woman, with nothing about her appearance to indicate that she needed special assistance. No one asked for such assistance. As they were getting off, a man with a uniform was holding a light at the place where they got off, which lighted up the steps and the ground around the steps. The plaintiff's son testified that a flagman or porter who had called the station was standing there saying, "Hurry, hurry." He did not offer to assist the plaintiff when she was getting off the car. As she was getting off, holding to the rail, the light blinded her some—she could not see well any way,—and she stepped off quickly and got hurt. The plaintiff, in testifying as to the manner in which she was hurt, said: "I was helping myself. I chose to do that in getting off the train. The light . . bothered me a little, and I thought I would hurry. I started to fall and caught my whole weight to keep me from coming headlong down, and it hurt, and hurts yet. I just started to fall, and it was so quick I reckon I must have missed the step. . . I think I did. I just thought I would hurry, as all were in a hurry." "I thought I was getting along very well, and I was, if I had not made a blunder." "My arm was hurt plumb down from the shoulder." "I can't do any hard work. The worst hurt was about the elbow and about the top of the shoulder. Dr. Dudley sent me some liniment that helped it. It continued to pain me for five or six weeks. At times it hurts me yet. At times I can't do up my hair. My arm is stiff. It still pains me every time I put my hands behind to raise my head." The train stopped long enough for all of the party and another person to get off safely. According to the testimony of the conductor, the flagman, the defendant's master of trains, and the station-agent, the train stopped at least two or three minutes, which the conductor stated was longer than it usually did, there being several heavy pieces of baggage to be taken from it there. All the baggage had not been loaded when plaintiff got off the train. It is usual to

hurry passengers at stations. The time at which the train stopped at Oostanaula was about five o'clock in the evening. After the plaintiff and those who were with her got off the train, her son asked the station-agent of the defendant if she could stay at the agent's home until he went to Reeves station for a conveyance; and the agent said they could walk back to Reeves. The plaintiff's son replied that his mother could not walk the trestle in the dark. The plaintiff testified that the agent said she could walk the railroad-bridge. They started off from the station and walked about half a mile when they met a son of the plaintiff, who was coming for them with a vehicle; he had gone to Reeves station to meet them and carry them home. The plaintiff's home was several miles from Reeves station. The plaintiff did not go home with her son that night, but spent the night at a residence about half a mile from Oostanaula. The next morning her son took her home in a conveyance. Her lodging that night and her trip home cost her nothing. The train on which the plaintiff was a passenger was a through train not scheduled to stop at Reeves station; but it sometimes did stop there. There were other trains that stopped there daily. The conductor in his testimony denied that he refused to stop the train at that station for the plaintiff. He testified that he always stopped there when there were passengers for that place, and intended to do so on this occasion, and made an effort to do so. He tried twice to blow the signal for the engineer to stop. When he first signaled, it was a mile before Reeves station was reached. The engineer did not get the signal, the reason being, he supposed, that the conductor's valve was stopped up with dust or cinders. Sometimes dust or small cinders would get in the pipe when it was being put together, or would work in there and obstruct the air. The engineer having failed to respond, he went forward to another car and gave the signal, to which the engineer responded, but they had then passed Reeves. The engineer testified that he took the latter signal to mean for him to stop at the next station after passing Reeves, and he did not stop until he reached Oostanaula. It would have been dangerous to have attempted to back the train to Reeves without first

sending a flagman back a mile the other side of Reeves and another a half-mile ahead to prevent possible collision with other trains.   If he had heard the first signal he could have stopped at Reeves.   The conductor stated that the reason he did not give the signal sooner was that he was busy "working" the train, which was crowded; that he had to take down memoranda of coupon tickets, and the train was running 35 or 40 miles an hour.

*Shumate & Maddox,* for plaintiff in error.
*W. J. Cantrell & Son* and *R. J. & J. McCamy,* contra.

ATKINSON, J.   1. Complaint is made that the court erred in charging the jury section 3906 of the Civil Code, which provides as follows:   "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff."   Special stress is laid upon the proposition that the court should not have given in charge to the jury the concluding clauses of that section, to the effect that they might give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff; and this brings us to consider whether, for a tort committed against a person which involves a mere negligent omission upon the part of a carrier to perform a contract of passenger carriage, whereby a passenger is exposed to inconvenience and other damage, there being no actual physical invasion of any personal or property right, that portion of the section of the code above referred to, and of which complaint is made, has any application, or whether it should be given in charge to the jury.   We think an analysis of the section of the code above quoted will show that it can have no application to the class of cases to which we have above referred.   It can not in any just sense be said that a mere negligent omission upon the part of a carrier to stop its train at a given point to which it has undertaken to transport a passenger is a trespass against such passenger.   The word "trespass" embraces only that class of torts which involve a violent,

unlawful, physical invasion of one's right of person or property, and this classification necessarily excludes those acts of one person resulting in injury to another, which arise from a mere omission to perform a duty imposed upon the party bound to perform by the terms of a contract entered into between them. If then the injury complained of consists of a mere omission to perform such a duty, it can not, in any just sense, be said that the person complained against has committed a trespass upon the person of the other; and if no trespass has been committed, surely the court is not authorized to give in charge a provision of the law which is designed to authorize the imposition of additional damages by way of deterring the wrong-doer from the commission of a trespass only. There are cases of expulsion from railroad-trains which involve not only the breach of the contract of passenger carriage, but likewise the unlawful invasion of the personal rights of the passenger in forcibly expelling him from the train. Such was the case of *Head* v. *Georgia Pacific Railway Company*, 79 *Ga*. 358; and in such a case it is entirely proper for the court to give in charge to the jury, not only that portion of the section of the code above referred to, which authorizes the jury to assess additional damages to deter the wrong-doer from repeating the trespass, but likewise authorizes them to give additional damages as compensation for the wounded feelings of the plaintiff. The facts of the present case, if the testimony of the plaintiff is to be believed (and this we take as true, the jury having found in her favor), make a case of a mere negligent omission properly to perform the contract of passenger carriage, resulting in inconvenience to the passenger, and in personal injuries received by her in attempting to alight from the train. The acts of the defendant were acts of omission only. No trespass, in a legal sense, was committed upon the person of the plaintiff; and we are therefore fully persuaded that the instruction given to the jury by the trial judge, which is above criticised, was entirely unwarranted by the evidence.

2. Other than as above indicated, no error of law appears to have been committed upon the trial; but the error above complained of bears directly upon the pivotal question in the case,

and we are, therefore, constrained to direct that the case be again tried. . *Judgment reversed. All the Justices concurring.*