## CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* QUILLEN.

[No. 2,805. Filed June 9, 1899.]

DAMAGES.—*Carriers.*—Where a passenger, through the mistake of the conductor, leaves a car before reaching his destination, he is only entitled to compensatory damages. *pp. 496-498.*

SAME.—*Carriers.*—*Excessive Judgments.*—A judgment against a railroad company for $150 for causing plaintiff to leave its train at a station twelve or fourteen miles from his destination is excessive, where it was shown that plaintiff left the train through the mere mistake of defendant's conductor, and that his actual damages, consisting of expenses incurred, and loss of time caused thereby, amounted to only $30. *pp. 496-499.*

From the Knox Circuit Court. *Reversed.*

*John T. Dye* and *Wm. H. Dye*, for appellant.

*W. A. Cullop* and *C. B. Kessinger*, for appellee.

COMSTOCK, C. J.—The complaint, in substance, alleges that plaintiff purchased a ticket from Indianapolis to Lafayette over appellant's railway; that he was due to arrive at the latter place at 7 o'clock p. m. of the 7th day of September, 1896; that he was a stranger in the part of the country through which the train ran from said point; that, when the train arrived at the station of Stockwell, the conductor who had taken plaintiff's ticket notified him that the train had arrived at the city of Lafayette, and that he must alight.

Cleveland, etc., R. Co. *v.* Quillen.

He did alight, and did not discover that the place was not Lafayette until the train had left the station, when he found that he was at Stockwell, twelve or fourteen miles from Lafayette; that on that day he had an engagement with persons with whom he was to transact business to meet him at the last named place at 7 or 8 o'clock p. m. on said day; that he was compelled to hire a conveyance to carry him to Lafayette, and to undergo a journey in the night-time, at great expense and inconvenience to himself, from which he suffered greatly in body and mind, and when he arrived in the city the parties with whom he had the business engagement had concluded that he would not arrive, and he missed his business engagement. There is no allegation of threats or violence on the part of the employes of appellant, nor of humiliation, worry, or mental agony of appellee caused by anything done or said by the servants of the railroad company. The cause was put at issue by general denial. The jury returned a verdict in favor of appellee for $150, and with the general verdict returned answers to interrogatories. The only ground upon which a reversal of the judgment is asked is that the damages are excessive.

This suit is one of four against appellant tried at the same term of the lower court, and a judgment for the same amount rendered in each case. The plaintiffs, who were neighbors and residents of Knox county, Indiana, and engaged in farming, started from Bicknell, Indiana, over the Pennsylvania railroad on September 7, 1896, for Lafayette, Indiana, for the purpose of buying a jackass. At Indianapolis they each purchased a ticket for Lafayette on the line of appellant's railway. When they reached Stockwell, about 7:30 o'clock p. m., some twelve or fourteen miles southeast of Lafayette, they alighted from the train, because, as they testified, they were told by the conductor that it was their station, or the place to get off. As soon as they discovered the mistake, which was as the train pulled away from the station, they

hired "two double rigs" and, without taking supper, drove to Lafayette, reaching there at 10:35 p. m. that night. The evidence shows that there was no ill treatment, no discourtesy on the part of appellant's servants, no humiliation suffered by appellee or either of his traveling companions. The testimony as to the circumstances under which they left the car is conflicting. The employes of appellant testifying that the usual stop was made at Stockwell, and the name of the station called. We can not weigh the evidence, but accepting the verdict of the jury as conclusive of the fault of appellant, a mistake without wantonness is shown. In the absence of violence in act or speech, and any conduct on the part of appellant's servants calculated to humiliate or annoy appellee, the amount of the wrong done by the conductor testified to, being manifestly a mistake, appellee is only entitled to compensatory damages.

The interrogatories and the answers by the jury are as follows: (1) "What time did plaintiff arrive at Lafayette on the evening of September 7, 1896? A. About 10:30 p. m. (2) What time was the train due at Lafayette? A. At 7:35 p. m. (3) How much time did plaintiff lose by reason of delay in reaching Lafayette? A. About three hours. (4) What was the reasonable value of the time lost? A. Twenty-five dollars. (5) What sum of money did plaintiff spend in reaching Lafayette from Stockwell? A. Five dollars." The same verdict was returned and judgment rendered in each case. As above stated, the jury awarded damages for loss of time, $25; expenses in going from Stockwell to Lafayette, $5. It follows that the remainder of the amount allowed, $120, was for the discomforts of the ride of fourteen miles on the night of the 7th of September, 1896, and the failure of appellee to get his supper before he reached Lafayette. The appellee testified that the night of the 7th of September, 1896, was "cool for the season;" that he was dressed in his summer clothes, and in the course of the ride he became cold. He saw the party

the same night with whom he had the engagement, but did not purchase the animal which he intended to buy. As to the object of his trip he therefore suffered no loss by the delay at Stockwell.

Appellant was liable for cost of transportation to Lafayette; for expenses incident to delay, and loss of time; for such damages as might reasonably be expected to be the natural result of the fault of appellant. Authorities are too numerous to be cited to the effect that appellate courts are reluctant to set aside judgments because of excessive damages. The reasons therefor are too obvious to require mention. But when the amount awarded is manifestly excessive, whether for fraud, corruption, or prejudice, the duty of the court is plain. It is not proper practice in actions in tort to require the jury to itemize the elements of damage. While the answers to interrogatories show the estimate which the jury put upon various items of damage, this court can only regard the gross sum allowed in determining the question. The allowances for expense and loss of time are generous. But it is clear that the gross sum is excessive; was not warranted by the evidence, and was awarded through prejudice or partiality. For this reason, the judgment is reversed, with instructions to the lower court to sustain appellant's motion for a new trial.