## SOUTHERN RAILWAY COMPANY *v.* PHILLIPS.

1. Where a paragraph in a petition contains both relevant, and irrelevant allegations, it will be purged of the irrelevant matters on special demurrer pointing out such; but if the demurrer goes to the paragraph as a whole, without specification of the irrelevant matter, the demurrant can not complain that the entire paragraph was not stricken.

2. According to the plaintiff's testimony, she was a passenger on defendant's road and entitled to continuous passage from B. to E. She was accompanied by a small child and carried a valise. The terminal point of the train upon which she traveled was Jesup, where she was to change cars. She was told by the conductor as the train was approaching the station of Odessa, which was within five miles of Jesup, that this was the place for her to get off. The plaintiff alighted as directed, and did not discover her mistake until after the train left. There were no station facilities, and there were some negroes near by. It was about ten o'clock at night, and she became frightened because she was apparently without protection or a place to spend the night. She

inquired of the negroes for direction to a house where she could spend the night; they directed her to a place, and on the way there she met a white youth, who invited her to spend the night with his mother, by whom she was hospitably entertained, and on the following morning she continued her journey to destination; the railway company accepting her original ticket. If the jury should find these circumstances to be true, then the plaintiff would be entitled to compensatory, but not to punitive damages.

(a) Even if the plaintiff had been entitled to punitive damages, the charge that the jury could consider the worldly circumstances of the parties in assessing such damages was erroneous.

MAY 11, 1911.

Action for damages. Before Judge Seabrook. Wayne superior court. July 30, 1910.

*Bennet, Twitty & Reese* and *Littlefield & Poppell*, for plaintiff in error. *W. M. Clements, W. W. Bennett,* and *D. M. Clark,* contra.

EVANS, P. J. Mrs. Georgia C. Phillips brought suit against the Southern Railway Company, to recover damages for being put off at a wrong station. The plaintiff, having purchased a ticket, boarded the passenger-train of the defendant company at Brunswick on a journey to Empire. It was necessary for her to change cars at Jesup. She was accompanied by her small child and carried a small valise. After she had been traveling for some time, and as the train was slowing up for a station, the conductor announced that it was the place for petitioner to leave the train, at the same time taking up the package and directing her with her child to follow him, and acting upon the direction of the conductor she left the train, which, as soon as she disembarked, rapidly moved away, leaving her in darkness. The place where she was put off was Odessa, a place five miles south of Jesup, without depot accommodations or other provisions for her comfort or safety. It was ten or eleven o'clock at night when she left the train, and for some time the only persons she saw were several negroes. She was very much frightened, and after some time had elapsed a white boy was called to her by the negroes, whom she asked if there were any white people in the community, and he finally secured a place for her to spend the remainder of the night. The plaintiff alleged that the conduct of the conductor in causing her to leave the train at a point other than her destination, at a strange place, in the nighttime, was gross negligence and wanton and wilful misconduct. The defendant demurred generally and specially to

the petition. The demurrers were overruled, and the case proceeded to trial. On the trial the plaintiff testified that she purchased a ticket over the road of the defendant company, entitling her to a passage from Brunswick, Georgia, to Empire; the train upon which she took passage left Brunswick at about eight o'clock at night. When the conductor took up her ticket she asked him if she did not have to change at some place between Brunswick and Empire, and he said, "Yes, you change at Jesup," and told her that the train was due to arrive at Jesup at about ten o'clock. Near that time the conductor came through the coach and called out the station, and she understood him to say Jesup. She was intending to ask some one before the train stopped if the station was Jesup, when the conductor took up her valise and hat-box and said, "Here is where you get off at," and when the train stopped the conductor assisted the plaintiff to alight. She thought she was at Jesup until the train had left. She saw some negroes around the station, and also a white lady, who got off the same train she did. When she got off the train she saw a switch-light and started in that direction, thinking it was the depot. She asked the lady who had got off the same train with her where she was going, and she replied that she was going home; and she asked her where to go to take the next train, and she said, "Go down there and ask them," waving to the place where some negroes were; she asked them where to go to take the next train, and they replied that there would be no train until the next morning, and said, "You think you are at Jesup, but this is Odessa." She inquired of them where she could spend the night, and they directed her to the "Captain's house." On their way they saw a young white boy named Carl Moody, who, being informed by the negroes that the plaintiff wanted to spend the night somewhere, invited her to spend the night with his mother. She accompanied Carl Moody to his mother's, a short distance from the depot, and spent the night with her. She did not get to sleep until about four o'clock in the morning, on account of the fright brought about by having been put off the train under the circumstances she narrated. The next morning she boarded the train and presented her ticket to the conductor, and explained that she was put off at Odessa when intending to leave the train at Jesup, and she was carried on this ticket to her destination. The servants in charge of both trains

treated her civilly and politely. Upon her return home she sent
Mrs. Moody one dollar for her night's lodging. The defendant
submitted testimony tending to show, that the train upon which
the plaintiff was traveling as a passenger was a local train, scheduled
to stop at Jesup; that when the train was approaching Odessa, a
station five miles from Jesup, the conductor announced that sta-
tion, and that the plaintiff, believing that she had arrived at her
destination, alighted from the car, being assisted by the con-
ductor. The conductor testified that he did not tell the plaintiff
that she had reached her station at the time she left the car at
Odessa. The plaintiff boarded another train of the defendant
railway company the next morning, and was carried on her ticket
to her destination, where she was met by her father. The jury
returned a verdict for the plaintiff for $250. The railway company
made a motion for a new trial upon the grounds that the verdict
was excessive, and that the court erred in giving certain instruc-
tions. A new trial was refused, and the defendant excepted.

1. The plaintiff's allegations were in some instances redundant,
but in the different paragraphs to which special demurrers were
directed there were allegations of fact appropriate to the plain-
tiff's cause of action. The special demurrers moved to strike the
entire paragraphs as being immaterial and impertinent; but as
some of the allegations in each paragraph criticised were not open
to this objection, the court did not err in refusing to strike the en-
tire paragraph. As against a general demurrer the petition set
forth a cause of action.

2. On the subject of damages the court charged as follows:
"If you find in addition to nominal damages that the facts and
circumstances at the time of this transaction were such as to
justify the assessing against the defendant of punitive damages,
while the law fixes no arbitrary standard by which you can be
controlled in that regard—no definite rule fixed by which you can
ascertain an amount, the law leaves it to the enlightened con-
sciences of impartial jurors to determine the amount of damages,
if any, that should be allowed by the jury. Upon this theory—
punitive damages, the law fixes no arbitrary standard to guide you,
except that it is left to the enlightened consciences of impartial
jurors. The worldly circumstances of the parties, the amount of
bad faith in the transaction, if any, and all the attending facts and

circumstances should be weighed in determining upon the amount if you should decide recovery is justifiable upon this theory of the case under the law and facts and circumstances. The jury should at all times be reasonable and just and not oppressive." The exception is that the evidence did not authorize a charge on the subject of punitive damages, and because there was no evidence of the worldly circumstances of the parties. "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." Civil Code (1910), § 4503. We are at a loss to see from the facts as narrated by the plaintiff any circumstances of aggravation authorizing a recovery of punitive damages. According to her own testimony the agents of the railway company were civil and courteous in their treatment of her, and her being put off at the wrong station was the result of a mistake. It is her contention that the conductor told her that she had arrived at the place where she was to change cars, and invited her to get off, and that she got off at the wrong station on his invitation. If the conductor's version of the incident be accepted as true, the plaintiff misunderstood the station announced "Odessa" to be "Jesup," and voluntarily left the train. Be that as it may, it is clear from both viewpoints that the plaintiff's leaving the train at Odessa was the result of a clear mistake. There is not a line in the evidence which indicates that any servant of the defendant company was influenced by any improper motive, or impelled by any desire to injure or to wilfully discommode the plaintiff. The charge on the subject of punitive damages should not have been given. Yazoo & M. V. R. Co. *v.* Hughes (Miss.), 50 Southern, 627; *So. Ry. Co.* v. *Harden,* 101 *Ga.* 263 (28 S. E. 847) ; *So. Ry. Co.* v. *Davis,* 132 *Ga.* 812 (65 S. E. 131) ; *So. Ry. Co.* v. *O'Bryan,* 119 *Ga.* 147 (45 S. E. 1000) ; *Central of Ga. Ry. Co.* v. *Wood,* 118 *Ga.* 172 (44 S. E. 1001) ; Moss *v.* Missouri Pac. Ry. Co., 128 Mo. App. 385 (107 S. W. 422) ; Tenn. Cent. R. Co. *v.* Brasher's Guardian (Ky.), 97 S. W. 349; Cleveland, C. C. & St. L. Ry. Co. *v.* Quillen, 22 Ind. App. 496 (53 N. E. 1024). Again, the charge was erroneous in that it instructed the jury that they might consider the worldly circumstances of the parties. In a tort of this character the worldly circumstances of the parties

are not the subject-matter of inquiry; and, even if the evidence had justified the charge on the subject of punitive damages, the charge as given was erroneous. *Atlanta Con. St. Ry. Co.* v. *Hardage,* 93 *Ga.* 457 (21 S. E. 100).

> *Judgment reversed. All the Justices concur.*