ST. LOUIS HOSPITAL ASSOCIATION. vs. THE CITY OF ST. LOUIS.

1. The city of St. Louis, having employed the Hospital Association to maintain the insane
within her limits, was, on every principle of law and justice, obliged to make good her
undertaking. Whether the city or county is bound, by law, to provide for the insane
is, in such case, an immaterial question.

S. KIRTLEY, City Counsellor.

I. The city was under no legal or moral obligation to provide for the insane; it was in
the exercise of a mere charity, and not in the performance of any duty, that the appellant
placed the insane patients at the Hospital and paid for their board. When, therefore, the
plaintiff had notice, that the city council refused to make an appropriation for he further

maintenance of the insane, the contract was terminated, and the plaintiff had no right, after such notice, to expect or demand compensation of the city.

Judge Mullanphy, who was Mayor in 1847, stated, that after the 1st of July, he refused to audit the monthly account for keeping the insane by the plaintiff, because, he had notified the Hospital Association of the refusal of the city to make further appropriations, or, to pay for the maintenance of insane in the Hospital.

II. The court erred in allowing the plaintiff to read to the jury the ordinance No. 1205, and passed in 1843. There was no pretence, that the contract under which the plaintiff sought to recover, was predicated on said ordinance or resolution, and it was, therefore, wholly irrelevant, and calculated to mislead.

III. If the city could be bound by a verbal agreement, made by a subordinate officer, it is difficult to reconcile the position taken by the court below, that in giving the notice, that the city would no longer pay for the board of the insane, such notice could not be given by the Mayor, but only by an ordinance.

No part of the negotiation was conducted in writing, and it is not right to apply a rule for the benefit of the plaintiff and deny its application for the defendant.

## A. & P. B. GERESCHE, for respondent.

The errors assigned are,

1st. The evidence given by the plaintiff, to which defendant excepted.

But the only instance of this, is when the ordinance No. 1205 was read. The record has not preserved the reason of the obligation. While, therefore, as a matter of truth, we will admit that it was on the score of irrelevancy, we will also state, that at the time of offering it, we mentioned that we did not offer the ordinance to prove the terms of our contract, but, as an instance, in support of the declarations of Sister Mary Alexis, Sister Mary Alicia and Sister Olympia, that it was the custom for the Hospital to contract with the city Register, and that the contract would subsequently be recognized, either by the passage of an ordinance embodying the provisions of the contract, or appropriating money for it. In other words, we offer it as cumulative, not as original evidence, and with this explanation it was admitted by the court. It certainly did not affect the verdict, as we shall take occasion to show in the argument about the damages, and hence, even if the court erred, it would not be a ground for reversal.

The 2nd, 3rd and 4th errors assigned, turn upon the one question, whether an executory contract can be dissolved by one without the consent of the other party, unless the party seeking to annul the contract place the other party in the same position he occupied before the contract was made.

The court below held, that it could not be done. There was no evidence that the city, when its officers gave the alleged notice, offered to take back the patients. Indeed, they did not. It is true, that under the provision of Ordinance No. 1778, the patients were subsequently taken away by the city authorities, but the charge is of the support of the insane patients until taken away by the city authorities. That the court did not err in its construction of the law, see Comyn on Con. p. 38, 39; Kent's Com. vol. 2nd, p. 480; Chit. on Con. p. 574, 575; Brown vs. Carland, 9 Mo. Rep. 452; Burnett vs. Stanton, 2 ibid, p. 181, Griffith vs. Frederick county Bank, 6 Gill & Johnson, p. 424; Perly vs. ———, 23 Pickering's Rep. p. 283; Conner vs. Henderson, 15 Mass. Rep. p. 304 (sect. p. 419) cases cited in note, and Hund vs. Selk, 5 East Rep. p. 449.

Again, the notice, such as it was, was given only after the city had for some time ceased to pay, and was, therefore, in default. That only the party not in default can rescind a contract, see Chitty on Con. p. 741.

It is submitted, that whether the opinions and proceedings of individual members or offi-

cers of a corporation are, or are not evidence, are questions not involved in this suit in its present situation, but the question is, if any notice be sufficient under such circumstances.

The 4th error assigned is the question of damages.

The evidence shows, that the agreement was to be paid monthly, that the accounts were rendered monthly. Interest, therefore, ran from the rendition of each account. The damages are, therefore, not excessive, for the court will find that the difference between the sum claimed was stated in the original and not the amended petition, to-wit: $3,638 31, and the amount of the verdict $4,345 66 is but the interest which thus accrued. Filed among the papers is the calculation made by the jury, themselves, and to which, therefore, the court may refer. Deduction being made for one patient, and interest on the sum charged for him, which patient it was doubtful if not received subsequent to the notice, and plaintiff therefore consented to the deduction.

Finally, it is respectfully submitted, that a case like the present, which embodies as much justice on the part of the plaintiff; wherein it was never contended that the plaintiff, its officers, or agents were guilty of any default or neglect; when the sole motive of opposition is, to compel the Hospital to resort to the doubtful alternative of suing the county, is (should the supreme court affirm the judgment of the court below,) a very proper one for the court to exercise the discretion given it by art. 34 of the act regulating practice in the supreme court. For such damages would, after all, but barely pay the plaintiff for costs and expenses which she has been compelled to sustain in the prosecution of her claim and which, nevertheless, she cannot otherwise recover, because the law does not present them to be taxed as costs.

SCOTT, J., gave the opinion the court, as follws:

The Hospital Association sued the city for the management and support of the insane, committed by the city to the care of the Association. On the completion of the city Hospital, the sick and insane in the Hospital, at the expense of the city, in pursuance of an order from the city authorities, were offerred to be delivered up to the city Register on the 20th August 1846. The Register refused to receive the insane, alleging, as a reason, that no accommodations were prepaired for them at the city Hospital, and he contracted with the Hospital Association to continue its care of them at $3 00 or $3 50 a patient per week, according as the pay should be cash or scrip. Under this agreement, the accounts of the Association for the support of the insane, were made out monthly, and the money paid until July 1847, when the city council refused to make appropriations any longer for the support of the insane, on the ground, that it was a duty incumbent on the county court to provide for their care and maintenance. The insane remained with the Association, after this, from the 1st. of July 1847 until the 30th of November 1848. None were received by the Association, at the expense of the city, after it was known that appropriations for their support had been refused by the city authorities. The Register was the properly authorized officer of the city, to grant permits to enter the Association at her expense. Ordinance No. 1205, passed in 1843, regulating the

compensation to the Hospital for keeping the sick and insane, was read in evidence, to the reading of which an exception was taken. The plaintiff recovered $4345,46, for which judgment was rendered, from which the city appealed. The instructions will not be noticed, as none were given of which the defendant can complain, and as the only question was, as to the liability of the city under the foregoing state of facts.

Although the city may not have been under any obligation to provide for or maintain the insane within her limits, yet, if she employed others to do this service, she was, on every principle of law and justice obliged to make good her undertaking with them. The contract made with the Hospital Association by the city Register, was recognized by the city authorities, as appropriations were frequently made in compliance with it. The subsequent withholding of appropriations, was not sufficient to discharge the city from liability under her contract. The insane could not be turned loose. Such an act may have been dangerous to the community and cruel to the patients. The city had no right to impose the odium and responsibility of such an act upon the Hospital Association. When it was determined that the insane should be maintained no longer at the expense of the city, they should have been removed from the Hospital by the corporate authority. It matters not how the refusal to provide for them was communicated to the Hospital, whether by ordinance or by the Mayor. Of itself, it was not sufficient to discharge the city from her undertaking.

We cannot perceive, in what manner the reading of the ordinance, respecting the allowance to be made for the support of the sick and insane, could affect the verdict. It did not provide a greater allowance to the Hospital than was contracted for.

The other judges concurring the judgement will be affirmed.