No. 14.—THE JUSTICES OF THE INFERIOR COURT OF HEARD COUNTY, plaintiffs in error *vs.* JOHN J. CHAPMAN and ANDERSON CHAPMAN, defendants in error.

[1.] A bastardy bond is intended for the protection of a county, *as a county ;* and there is no breach of it until the child has become chargeable to the county.

[2.] By our Poor Law system, the Justices of the Inferior Court have the right to inquire into the circumstances of the poor, to elect whom they will treat as a pauper, and who shall become chargeable to the county ; and until it has done so, by some act or order, no person can properly be said to be thus chargeable.

[3.] The proper evidence that a bastard child has become chargeable to the County, is to be found in the payment, by the Inferior Court, of expenses,

xvi–12

after refusal or failure of the putative father to pay the same, on account of the lying in of the mother, or the maintenance of the child; or the granting of an order for such payment.

Debt on bond. Demurrer to the petition in Heard Superior Court. Decided by Judge WARNER, May Term, 1854.

This was an action of debt, brought by the Justices of the Inferior Court of Heard County, against the defendants, on a bastardy bond. The petition, among other things, set forth that the defendants entered into said bond on a certain day specified, and duly and legally executed the same, by which they bound themselves to the plaintiffs, in the sum of Six Hundred and Forty-two Dollars, Eighty-five and Three-fourth Cents, to which said bond the following condition was annexed: "The condition of the above bond is such, that whereas the above bound John J. Chapman stands charged with being the reputed father of a bastard child, of which Mary Ann Formby is now pregnant. Now, if the said John J. Chapman shall, from time to time, and at all times hereafter, acquit, discharge and indemnify, and save harmless the said Justices and the inhabitants of said county, from all costs, charges and trouble, for and by reason of the lying in of the said Mary Ann with, and of the birth, maintenance of and bringing up said child, or of and from all suits, charges and demands whatsoever, touching and concerning the same, then the above obligation to be void, otherwise in full force." The said petition then goes on to allege, that Mary Ann Formby is a free, white single woman, and " that the said Mary Ann, since the execution and delivery of the said writing obligatory, in consequence of her said pregnancy, has been confined and lay in, sick, for a long space of time, and gave birth to the said bastard child during her said confinement; and that the said Mary Ann, during the time aforesaid, was sorely sick at the house of Pleasant A. Formby, who is an inhabitant of this county; and that the said Mary Ann, while sick at the house of the said Pleasant, was a great charge, expense and trouble to the said

Pleasant, in this—that the said Pleasant had to nurse, sit up with, employ medical aid, and pay physician's bills, hire nurses, and do many other acts, and expend a large sum of money, to-wit: the sum of One Hundred Dollars, of heavy expense to him, the said Pleasant A. And your petitioners aver, that they, as Justices of the Inferior Court, have been presented with large medical bills, and with bills for nursing, boarding and clothing the said bastard child, and with the expense of nursing, boarding and lying in of the said Mary Ann; and that the said John J. has not well and truly performed his said obligations, because he has refused to pay the above bills and charges; and that the said Anderson Chapman has not done so for him; and that they, the said defendants, have committed a breach of said bond in this—that the said John J. Chapman did not, at the time of executing said bond, nor at any other time, acquit, discharge, and save harmless your petitioners, nor the inhabitants of said County, from all costs, charges and trouble, by reason of said lying in, &c. whereby an action hath accrued to your petitioners," &c.

Counsel for the defendants demurred to the said petition, and moved to dismiss the same, " because it did not appear, from the declaration, that the County had become chargeable, or was liable to become chargeable, for the support, maintenance or education of said bastard-child, or expenses of the lying in of the mother, in giving birth to the said bastard child, by the actual payment by the Inferior Court, of any moneys disbursed on that account, or the passing of any orders for the disbursement of any county funds for that purpose, or any liability or undertaking of the Court to pay and disburse any county funds for that purpose."

Which demurrer the Court sustained, and Counsel for plaintiff excepted.

WRIGHT & FEATHERSONE, for plaintiffs in error.

MABRY, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] It would seem, from the terms of this bond, and the language of the petition, to have been the impression of the petitioners, the Justices of the Inferior Court of Heard County, that the bastardy bond is given for the protection or benefit of private citizens of the county, who may incur expenditures on account of the lying in of the mother, and the maintenance of the child, as well as for the protection of the county, generally, as-represented by the Inferior Court. That is to say, the intention of the Legislature was, that suit should be brought on such bond by the Inferior Court, as well for the use of any private person, incurring such expenses, as for the Court itself, representing the County. This appears to be so, because this bond has been so written as to make the defendants undertake to save, harmless from all costs, &c. not only the Court, but also " the inhabitants of the county." And in alleging a breach of the bond, the pleader evidently goes upon the idea, that the same has been forfeited, because Pleasant Formby, whom he declares was one of the inhabitants of the county, had incurred costs and charges in this behalf, which the defendants had refused to pay.

Now, our construction of the Statutes, in such case made and provided, is that the bond was intended for the protection, only, of the county, *as a county.* That it was designed to keep the child out of that class of paupers for which the authorities of the county might feel themselves under obligations to provide, and which may be said to be liable to become chargeable to the ·county. And this construction seems plainly authorized by ·the language of the Statutes.

The act of December 16, 1793, provides, that "any Justice ·of the Peace, who, of his own knowledge, or upon information ·on oath, &c. of any free white woman having a bastard child, or being pregnant with one, which it is probable will become ·chargeable to the county, may issue a warrant for the arrest of the mother, and require bond, in the sum of 150*l*, with security,

for the support and education of such child or children, till the age of 14, unless the mother shall discover the father of such child or children." In which case, the Act requires a warrant to be issued for the arrest of the father, and that he shall be required to give bond, with security, "for the maintenance and education of such child or children, until they arrive at the age of 14; and also the expenses of lying in with such child or children, boarding, nursing and maintenance, while the mother of such child is confined by reason thereof."

The Act of 1809 declares, that "it shall be lawful for the Inferior Courts of this State, when any child or children have or shall become chargeable to the county, where bonds are taken, or hereafter to be taken, in conformity to an Act passed the 16th day of December, 1793, for the maintenance of bastard children, to institute an action on all bonds so taken or hereafter to be taken, in manner aforesaid, and prosecute the same to judgment; and it shall be lawful for them to recover the full amount of said bond or bonds; which judgment or judgments shall remain open, and be subject to be appropriated by the Courts aforesaid, from time to time, as the situation and exigencies of the said bastard child or children may require".

It will be perceived, that in the first of these Acts, the Legislature refer to a bastard child, "which it is probable *will become chargeable to the county*"; and in the second, to such bastard child or children, as "*have or shall become chargeable to the county*". And that in the latter act, provision is made for the enforcement of the bond by the Inferior Court, in such a way as serves to show, that the Legislature contemplated protection to the interests of the county, *as a county*.

From these things we conclude, that by our Law, there is no breach of such bond, until the bastard child or children has or have become *chargeable to the county*, and that not until then can the Inferior Court bring suit upon it.

[2.] What is to be considered and treated as evidence, that such child has become chargeable to the county?

That the answer which we give to this question may be correctly appreciated, we premise, that in this State, we have no

such poor law system as exists in some other countries, and especially in that from which we chiefly derive our laws; where, by settlement of law, the right of a pauper to support, by a certain county or parish, is sometimes fixed. Our Legislation only declares, that "the Inferior Courts shall have power to inquire into the circumstances of the poor, bind out orphans, appoint guardians, and appoint overseers of the poor; and for this purpose, shall levy a tax". (*Act* 1792, *Cobb's Dig.* 346.) An Act of 1818 provides, that the tax "shall not exceed one-eighth part of the general county tax". (*Cobb*, 347.)

To the Inferior Court, a wide discretion, in the premises, is thus left. They are to inquire into the circumstances of the poor, to determine who shall be considered and treated as a pauper, and whether or not he or she shall become chargeable to the county. A bastard child is not, therefore, chargeable to the county, until the Inferior Court has given their sanction to its becoming so, and by some act, fixed this *status* for it. It may be born of a mother, an inhabitant of the county, who is unable to support it, or to pay the expenses of her lying in; yet, she may be so situated, (living, perhaps, with parents or friends, who are willing and able to maintain her and her child,) as to make it expedient that the Court should not treat the child as chargeable to the county.

[3.] This consideration influences us to hold, in answer to the question which we have put, that evidence of the child's having become chargeable to the county, must be some act ·or order of the Court, making it so. A majority of this Court (my brethren) think that the proper evidence, is some payment made by the Court, of some portion of expenses, in this behalf incurred, after failure of the putative father to pay the same, or some order, made by the Court, for such payment. This affords, as they think, a plain and practical manifestation, that the Court regards the child as chargeable to the county. For myself, I go a little further, and am of opinion, that after failure of the father to pay any such expenditures, any other expression by the Court, and entered on their records accordingly, (it might be a direct declaration to this effect,) that they con-

sider the child as chargeable to the county, or have elected to make it so, will, in like manner, afford sufficient evidence that the child has become chargeable to the county.

But no such evidence exists in this case, and the judgment must be affirmed.