THE COVINGTON AND MACON RAILROAD COMPANY *v.* THE MAYOR AND COUNCIL OF THE CITY OF ATHENS.

The city of Athens has no power under its charter to make a contract with a railroad company, promising to secure for it a right of way through that city, together with certain lots of land therein, in order for the company to lay down its road-bed there. Such power is not conferred by the authority granted in the charter to pass ordinances relating to the opening and laying out of streets, the same having no reference to the road-bed of a railroad company. Money expended in fulfillment of such contract, and on the faith of the promise, is not due for purely charitable purposes, but for the interest and purposes of the railroad company; and even were it shown that the city received any benefit from the contract, the same is void as contrary to public policy.

April 25, 1890.

Constitutional law. Municipal corporations. Railroads. Contracts. Before Judge HUTCHINS. Clarke superior court. April term, 1889.

The Covington and Macon Railroad Company brought suit against the Mayor and Council of the City of Athens for $19,483, besides interest, making the following allegations: In the year 1886, plaintiff was engaged

in the construction of its railroad, which was projected to be built from Macon *via* Monticello to Covington, and it was ultimately intended to continue the line to Buford or some other point on the Atlanta and Charlotte Air-Line railway. The work of construction began at Macon, and had been completed as far as Monticello so that trains could run. Beyond Monticello and in the direction of Covington, about ten miles of grading had been done at a cost of ——— thousand dollars. At this juncture, plaintiff received propositions from the defendant to divert its line of road at Monticello, and instead of building it to Covington to build it to Athens and connect it at the latter place with the Northeastern railroad. This proposition finally resulted in a contract (a copy of which is attached to the petition), by which it was agreed on the part of the plaintiff that the road should be diverted from its original route at Monticello and brought *via* Madison to a connection with the Northeastern railroad in the corporate limits of Athens. On the part of defendant it was agreed, among other things, that the right of way within the corporate limits of Athens to the point of junction or connection with the Northeastern railroad, and depot lot within the corporate limits of Athens, therein specified, were to be conveyed to plaintiff free of all cost to it. It was stated in the contract that the city of Madison, along with defendant, undertook to provide depot lots at other stations and right of way from Monticello to the corporate limits of Athens; but plaintiff expressly waives any claim it might have against defendant for any right of way or lots or parts of the same outside of the corporate limits of Athens, and avers that said sum of $19,483 is the cost of the right of way and depot lot purchased for said purposes within the corporate limits of Athens, and which the defendant, in consideration of the

premises above stated, expressly undertook and promised to pay for and have conveyed to plaintiff free of all cost to it.    Plaintiff in good faith, in pursuance of said contract, did abandon its projected line of road from Monticello to Covington, and did divert said line at Monticello *via* Madison to Athens and to a connection in the corporate limits of Athens with the Northeastern railroad; it has built, completed and equipped said railroad from Monticello *via* Madison to Athens, and has connected it within the corporate limits of Athens with the Northeastern railroad in strict compliance with said agreement; all the work done on the original route between Monticello and Covington had to be and was thrown away, and all the money expended in doing said work thus thrown away was lost to plaintiff.    In addition thereto, plaintiff lost —— thousand dollars of subscriptions at Covington, which were forfeited because said road was not built to that point as originally intended, that being the condition of said subscriptions. All this loss was sustained in consequence of the fact that plaintiff contracted to divert and did divert said line of road to Athens; and in carrying out said contract and submitting to said loss, plaintiff relied upon the express undertaking and agreement of the defendant above referred to.    In pursuance of said contract, and at the special instance and request of defendant, it has paid out for said right of way and lots within the corporate limits of Athens said $19,483, which payments were completed in December, 1888, and said sums thus paid were just compensation to the former owners for the property for which it was paid.    Defendant has derived great benefit from this contract and from the building of plaintiff's road to Athens and connecting it with the Northeastern railroad, in this: in said contract it was further stipulated that the cities of Madison and Athens should take $150,000 of the first mortgage

v. 85-24

bonds of plaintiff at par when said road should be completed and connected with the Northeastern railroad, the city of Madison to take $53,000, leaving $97,000 of first mortgage bonds for the defendant to take; and the defendant contracted with the Richmond and Danville Railroad Company, a corporation of Virginia, to take this $97,000 of bonds in its place, which the Richmond and Danville company did in consideration of the release of itself and of the Richmond and West Point Terminal Railway and Warehouse Company from an obligation to extend the Northeastern railroad to Clayton, in the county of Rabun, entered into on the 30th of April, 1881, as a consideration for $100,000 of stock in the Northeastern Railroad Company on that day sold to the Richmond and West Point company by the defendant. Defendant had the right to own said stock and to transfer it, and had the right to contract with the Richmond and Danville company, in lieu of the northern extension of the Northeastern railroad, to require the Richmond and Danville company to take its place and pay for the $97,000 of the bonds of the plaintiff. The defendant would have had the authority to have transferred to plaintiff this claim upon the Richmond and Danville company to extend the Northeastern railroad northward, for any valuable consideration which might have been agreed upon between the parties, and to have delivered to plaintiff whatever might thus have been realized; and in effect and substance defendant has done this, and to the extent of the subscriptions thus assumed and taken by the Richmond and Danville company. The sum of money above mentioned has been demanded of defendant, and payment has been refused.

The action was dismissed on demurrer, and the plaintiff excepted.

BARROW & THOMAS, THOMAS & STRICKLAND, and HILL & HARRIS, for plaintiff.

A. J. COBB, for defendant.

BLANDFORD, Justice.

This was an action brought by the plaintiff in error to recover of the defendant in error some nineteen thousand dollars which the plaintiff alleged that the defendant was indebted to it by reason of a certain contract entered into between the parties, in which the defendant promised to secure for the plaintiff a right of way through the city of Athens, together with certain lots of land therein, in order that the plaintiff might lay down its railroad through said city and connect with the Northeastern railroad; plaintiff alleging that at the special instance and request of defendant, it purchased said lots and the right of way and built its railroad through said city at a cost of over nineteen thousand dollars.

It is insisted that the city of Athens had authority to make this contract by virtue of its charter (under §15 thereof), which gave to the Mayor and Council of the City of Athens authority to pass all ordinances respecting the streets of said city, to lay out the same, or to pass any other regulation or ordinance that should appear to them necessary and proper for the security, welfare and interest of said city. We see no authority granted to the city under this section of the charter which would authorize the city to make the contract set out in the plaintiff's declaration. See Acts of 1872, p. 131. The city would have no authority, without an act of the legislature at the time the city was chartered, to make any subscription to the capital stock of a railroad company, to make any donation to the company, or to pay for the right of way to be used by said railroad. The authority granted in the charter to pass

ordinances in relation to the streets of said city, or to open and lay out streets in the city, has no reference whatever to the road-bed of a railroad company; and since the adoption of the constitution of 1877, the legislature can grant no such authority to this city, or to any other city or town in this State. Art. 7, sec. 6, par. 1, of the constitution of this State (Code, §5189) prohibits the General Assembly from authorizing any county, municipal corporation or political division of this State to become a stockholder in any company, corporation or association, or to appropriate money or to loan its credit to any such company, corporation, association, institution or individual, except for purely charitable purposes. It cannot be said that the money which the railroad company claims to be due to it from said city is money due for a purely charitable purpose, but the same is claimed to be due for the interest and purposes of the railroad company itself. We do not think the declaration sets forth such a cause of action as would entitle the plaintiff to recover; and the demurrer thereto was rightly sustained by the court. This is not a case in which there is anything in the hands of the defendant which it has received or made by virtue of this illegal contract, so as to come within the rule claimed by the plaintiff in error, that inasmuch as the railroad company had to perform its part of the contract, the city cannot be allowed to retain any benefit which it received by virtue of said contract. But inasmuch as it does not appear, or is alleged in the declaration, that the city has received any benefit by virtue of this contract, even if such a doctrine could be applied to a case like this, the contract which is sued upon appears to us to be void as contrary to the public policy of this State, as declared by the 7th article of the constitution above set out.    *Judgment affirmed.*