HIRSCH *et al. v.* MAYOR & COUNCIL OF BRUNSWICK.

The municipal authorities of Brunswick have power to lease as public property the water terminations of the streets of that city.

Argued January 13, — Decided February 7, 1902.

Petition for mandamus. Before Judge Bennet. Glynn superior court. October 26, 1901.

The petition was by certain citizens and property-owners of the City of Brunswick, for mandamus to require the mayor and council to cause to be removed from the western extremity or water termination of Gloucester street in that city, between Bay street and the waters of Oglethorpe bay, a wharf and other structures erected by the Downing Company under a lease from the mayor and council, and railroad tracks which had been placed on that part of the street by railroad companies under permits granted by the mayor and council, and which wharf, tracks, etc., the petitioners alleged, were obstructions to the free use of the street by the public. The mayor and council filed a demurrer and an answer to the petition; and the court, after hearing the case, refused to grant a mandamus. Petitioners excepted.

*Crovatt & Whitfield,* for plaintiffs.
*F. E. Twitty, W. G. Brantley,* and *W. E. Kay,* for defendant.

LUMPKIN, P. J.  The only question presented in this case is whether or not the municipal authorities of the City of Brunswick have the power to lease the water terminations of its streets, and thus prevent access through the same, by the public generally, to

the water's edge. The court below held that these authorities had such power; and if this ruling was correct, the judgment excepted to should be affirmed. On December 22, 1857, the General Assembly passed an act entitled "An act additional to an act to incorporate the town of Brunswick, in the county of Glynn, to define its jurisdictional limits, &c., &c., approved February 22d, 1856, to amend said charter, to confirm the doings of the mayor and council, to mark the boundary lines of the town and common used for other municipal purposes therein specified." (Acts of 1857, p. 167.) By the second section of this act of 1857 the mayor and council of the city were authorized " to adopt any measures which may appear to them to be necessary or proper to secure and protect the interests of the city, and the property thereof, and to lease the balance of the town commons, and other public squares, and public trust lots, water terminations of the streets, and all other public property belonging to the city, on such terms and for such periods and considerations as they may deem for the interest of the city, and the well-being of its citizens." In 1866 another act·was passed giving to the Mayor and Council of Brunswick authority "to lease all or any portion of the common or any other public property appertaining to said city for such term of years as may seem to them advantageous to said city." (Acts of 1866, p. 184.) The only qualification upon the power thus conferred was that no lease should exceed a term of 99 years, unless assented to by a majority of all the legal voters of the city. .In 1872 an act was passed entitled "An act to consolidate and amend the several acts incorporating the City of Brunswick, and for other purposes therein mentioned." (Acts 1872, p. 151.) By the.42d section (page 160) it was declared that "the said mayor and council shall have the authority and power to adopt and execute any measures which may appear to them necessary and proper to secure and protect the interests of said city, in all and every portion of said commons, and in all other property thereof." Again, in 1889, another act relating to the City of Brunswick was passed. Acts of 1889, p. 1010. This, however, was not an act purporting to consolidate the several previous acts incorporating this city, but, as its title clearly indicates, its purpose was to amend the consolidating act of 1872, mentioned above, and also an act amendatory thereof which was approved February 25, 1876. The act of 1872 did not expressly purport to re-

peal the act of 1857 or the act of 1866, but merely contained a general section repealing all conflicting laws.

It was insisted in the brief for the plaintiffs in error that in passing the act of 1872 the General Assembly intended to sweep out of existence and do away with all previous acts with relation to the incorporation of the City of Brunswick, and that accordingly the power conferred by the act of 1857 to lease the water terminations of the streets, and the power conferred by the act of 1866 to lease "the common or any other public property appertaining to said city," if applicable to the water terminations of the streets, no longer existed after the approval of the act of 1872. It is not clear whether or not the consolidating act of 1872 had, or was designed to have, the effect thus claimed for it. We do not, however, deem it necessary to rule definitely upon this precise question; for, as will have been noted, the act of 1872 itself confers upon the municipal authorities of Brunswick the power to adopt and execute any measure which they may consider necessary to secure and protect the interests of the city, not only in the commons, but " in all other property thereof." So the real question is: are the water terminations of the streets of Brunswick "property" in the sense in which this word is used in the quotation last made? Undoubtedly, they were so regarded when the act of 1857 was passed. That act, like that of 1872, authorized the mayor and council to adopt measures to secure and protect the interests of the city and "the property thereof;" and in enumerating the items of the city's property, it expressly included the " water terminations of the streets." Even if, then, the act of 1857 has been annulled by the act of 1872, there is nothing in the latter which either in express terms or by necessary implication does away with the proposition that these water terminations should be treated as " property " and subject to such disposition as the mayor and council, under the broad power conferred upon them by the act of 1872, should see proper to make of the same in order to secure and protect the best interests of the city. On the same line it may, we think, be safely asserted that the act of 1866, in referring to the public property of the city, was intended to apply to the water terminations of the streets. It is true that the leasing power conferred by this act expressly mentions "the common," but it can scarcely be doubted that at the date of its enactment the water terminations were still, in legislative contemplation, property

of the city. As will have been seen, the act of 1866 limited the terms of leases to 99 years, unless by popular vote a longer term was assented to by a majority of the legal voters. The lease involved in the present case does not exceed 99 years.

We do not think the 42d section of the act of 1872 was in any wise affected by the act of 1889. It was not mentioned in that act, and, as has been seen, the act of 1889 was not an act to create an entirely new charter for Brunswick, but only one to amend two acts previously enacted with reference thereto. Our conclusion therefore is that the water terminations of the streets of the city are property, and, as such, the same may be leased by the municipal authorities, with the limitation on their power above pointed out.

It was urged in behalf of the plaintiffs in error that the act of 1857 was unconstitutional in so far as it declared these water terminations to be property. The objection to the act in this respect was that it contained matter not embraced in its title. We do not think this position well taken, for it seems to us that the title, which is quoted above, is broad enough to cover this particular matter. But even were it otherwise, a careful reading of the act of 1872 will show that in passing it the General Assembly recognized and dealt with the act of 1857 as a valid law. This is deducible from the fact that in the act of 1872 many of the provisions of the act of 1857 are repeated either in terms or in substance, and we are fully satisfied that in passing the act last mentioned it was clearly within the mind of the lawmaking power to deal with and treat as property of the city the water terminations of its streets, though such terminations were nowhere in the act expressly mentioned. There was no error in refusing to grant a mandamus compelling the city authorities to remove the obstructions complained of in the petition filed by the plaintiffs in error.

*Judgment affirmed. All the Justices concurring.*