WASHINGTON WATER & ELECTRIC COMPANY *v.* POPE MANUFACTURING COMPANY *et al.; et vice versa.*

156

Nos. 8944, 8990.   December 19, 1932.

*Clement E. Sutton* and *Wilcox, Connell & Wilcox,* for plaintiff in error.

*B. W. Fortson,* contra.

BELL, J. (After stating the foregoing facts.)

We will first consider the general demurrer. The charter of the City of Washington of force at the time of the transactions un-

der consideration contained the usual general-welfare clause. Ga. L. 1894, p. 187, § 10. By an act approved December 21, 1898, the charter was so amended as to authorize the mayor and council to construct a system of waterworks, and also "to contract with private individuals and corporations to furnish water . . and to charge for and collect for the same whatever may be agreed upon." Ga. L. 1898, p. 287, § 4. We are not concerned with the new charter granted in July, 1929. Ga. L. 1929, p. 1396. The General Assembly has not conferred upon the Public Service Commission or other like body any power to fix and determine water rates, and the only power granted to the particular municipality is contained in the charter provisions referred to. In the absence of a delegation of additional authority upon the subject, the City of Washington had no power to regulate or control rates for the public service of furnishing water to itself or its inhabitants, except by a contract with the corporation or person rendering such service. Bluefield Waterworks Co. v. Bluefield, 69 W. Va. 1. (70 S. E. 772, 33 L. R. A. (N. S.) 759); City of St. Marys v. Hope Natural Gas Co., 71 W. Va. 76 (76 S. E. 841, 43 L. R. A. (N. S.) 994); Home Telephone Co. v. Los Angeles, 211 U. S. 265 (29 Sup. Ct. 50, 53 L. ed. 176). The mayor and council, however, were authorized for the time being to fix rates in this manner, whether or not the contract could be disturbed by subsequent legislation. *City of Dawson* v. *Dawson Telephone Co.,* 137 *Ga.* 62 (72 S. E. 508); *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 142 *Ga.* 841 (83 S. E. 946, L. R. A. 1916E, 358); *Georgia Power Co.* v. *Railroad Commission,* 149 *Ga.* 1 (98 S. E. 696, 5 A. L. R. 1). The defendant, as the holder of a franchise to conduct the business of furnishing water to the city and its inhabitants and as a company having the power of eminent domain (Civil Code of 1910, § 2923), was a public-service corporation, and owed a public duty to the plaintiffs. *Freeman* v. *Macon Water Co.,* 126 *Ga.* 843 (56 S. E. 61, 7 L. R. A. (N. S.) 917). While the plaintiffs could not sue the defendant for damages for a mere failure to furnish water to the municipality for the purpose of extinguishing fires (*Fowler* v. *Athens Waterworks Co.,* 83 *Ga.* 219, 9 S. E. 673, 20 Am. St. R. 313; *Holloway* v. *Macon Water Co.,* 132 *Ga.* 387, 64 S. E. 330; Moch Co. v. Rensselaer Water Co., 247 N. Y. 160, 159 N. E. 896, 62 A. L. R. 1199), this does not mean that the plaintiffs as inhabitants owning and

operating business establishments therein can not invoke the contract between the water company and the municipality, so far as the same may apply to rates for any service or subject-matter falling within the purview of the contract. Where the service or subject-matter in controversy has been covered by a valid contract between the water company and the municipality, such inhabitants may rely upon the agreement in regard to rates. *Freeman* v. *Macon Water Co.,* supra; Adams v. Union Railroad Co., 21 R. I. 134 (42 Atl. 515, 44 L. R. A. 273) ; Pond v. New Rochelle Water Co., 183 N. Y. 330 (76 N. E. 211, 1 L. R. A. (N. S.) 958, 5 Ann. Cas. 504) ; Robbins v. Bangor Railway & Electric Co., 100 Me. 496 (62 Atl. 136, 1 L. R. A. (N. S.) 963) ; Henderson v. Shreveport Gas Co., 134 La. 39 (63 So. 616, 51 L. R. A. (N. S.) 448) ; 43 C. J. 428.

If the contention between the parties relates to some matter not embraced by the contract, the rates prescribed and determined thereby are not controlling; but in such a case, the legislature not having provided otherwise, the water company may declare its own rates, subject to the conditions that the rates must be reasonable, and that the company as a public-service corporation can not arbitrarily deny the service required. *Edwards* v. *Milledgeville Water Co.,* 116 *Ga.* 201 (42 S. E. 417) ; *Dodd* v. *Atlanta,* 154 *Ga.* 33 (113 S. E. 166, 28 A. L. R. 465). If the rates are reasonable, the company may discontinue the service for non-payment of such charges by the customer, provided "that the water supply should not be shut off in case the customer disputes in good faith either the amount due or his liability therefor." *Dodd* v. *Atlanta,* supra. Rates so promulgated, though presumed to be reasonable, will be open to judicial investigation upon that question. Smith v. Birmingham Waterworks Co., 104 Ala. 315 (16 So. 123) ; Horsky v. Helena Water Co., 13 Mont. 229 (33 Pac. 689) ; Whitmore v. Interurban Water Co., 158 App. Div. 178 (142 N. Y. Supp. 1098); Washington v. Washington Water Co., 70 N. J. Eq. 254 (62 Atl. 390) ; Barrell v. Lake Forest Water Co., 191 Ill. App. 269; Ball v. Texarkana Water Corp. (Tex. Civil App.), 127 S. W. 1068. See also 19 R. C. L. 860, § 161, and the annotation in 28 A. L. R. 482.

We have seen that under the charter of the City of Washington the mayor and council had no authority to prescribe rates for water rents otherwise than by contract. The defendant company is the

holder of a contract made with the municipality, and can not now be forced to change it. Neither the city nor the plaintiffs can compel it to execute a supplemental agreement. Before the sale of the city water system, the plaintiffs or their predecessors laid their privately owned mains and connected the same with the mains of the municipal system. They also erected hydrants and a storage-tank or tanks and installed individual sprinkler systems. The city tapped the mains of the plaintiffs in some places, and used the same in conducting water to other sections. In all cases of fire the city had and exercised complete control over the means and facilities afforded by the plaintiffs; and in view of these facts and benefits no service charge was ever made against the plaintiffs by the municipality. In the sale of the system owned by the city, however, the purchaser did not acquire title to the extensions and improvements made by the plaintiffs and their predecessors, and the contract as to the water to be supplied by the purchaser and its successors did not require the furnishing of water without charge for the special benefit of the plaintiffs, as the municipality had been accustomed to do. Even the municipality could not be bound indefinitely by a contract to furnish water to an individual free of charge, in consideration of some advantage allowed to the municipality by such individual. *Horkan* v. *Moultrie*, 136 *Ga.* 561 (71 S. E. 785); *Neal* v. *Decatur*, 142 *Ga.* 205 (82 S. E. 546).

By the allegations of the petition the defendant is under an obligation to furnish water to the city for fire-extinguishing purposes at $50 per fire hydrant for at least 55 hydrants, and to furnish water to the city and its inhabitants for other purposes on a graduated scale of so much per each thousand gallons. It is perfectly clear that the agreement did not include the privately owned hydrants of the plaintiffs or the sprinkler systems installed in their buildings; nor did the contract itself require the defendant to furnish any water to the plaintiffs for fire-extinguishing purposes. Any duty in that regard would arise in view of its character as a public-service corporation. The plaintiffs are requiring a supply of water for their special benefit, and in order to obtain it are obliged to pay such charges as are reasonable and just. Britton *v.* Green Bay Waterworks Co., 81 Wis. 48 (51 N. W. 84, 29 Am. St. R. 856); House *v.* Houston Waterworks Co., 88 Tex. 233 (31 S. W. 179, 28 L. R. A. 532). The "petitioners' systems of fire protection" were

not "a part of the city's system" to the extent of entitling them to obtain water from the defendant for fire-extinguishing purposes solely in consideration of the amounts paid to the defendant by the municipality. The plaintiffs' reasons for complaining of the "service" charges made are stated in paragraph 17 of their petition. Upon application of the foregoing principles, one and only one of these reasons can be held meritorious. In subparagraph 4 it was alleged that the charges were "arbitrary, unreasonable, unjust, and discriminatory, the same being as against your petitioner Pope Manufacturing Company $8 per month, as against your petitioner Washington Manufacturing Company $4 per month, as against your petitioner C. C. Granade $6 per month, and as against your petitioner C. H. Orr $6 per month." Neither these rates nor the service to which they refer can be held to have been covered by the contract between the City of Washington and the defendant water company. The reasonableness of the rates is therefore a matter upon which the plaintiffs are entitled to be heard. The plaintiffs offered to do equity, and the petition discloses no reason for concluding that they were not acting in good faith in disputing the amount due. In such a case the defendant can not discontinue the supply of water pending a judicial determination of the reasonableness and fairness of the charge. *City of Atlanta* v. *McJenkin,* 163 *Ga.* 131 (135 S. E. 498). From what has been said, the petition stated a cause of action, and was therefore not subject to general demurrer, although some of the contentions made were not well founded.

■ The principles enunciated above will practically control the special demurrers. To avoid a repetition of allegations, reference is made to the statement which precedes this opinion. Paragraphs 8 and 9 of the petition were each demurred to in whole upon the grounds that it was not alleged how the consent and approval of the City of Washington for the erection of the improvements therein referred to was obtained, nor whether the same was oral or in writing; and paragraph 9 was demurred to upon the additional grounds that it was not shown with sufficient certainty when the agreement was made, nor when the mains and systems of the plaintiffs were installed. Paragraphs 8 and 9 each contained material allegations of fact touching extensions and improvements made by the plaintiffs or their predecessors in title, and did not stop with the mere statement that some consent had been obtained from the city. Each of

the grounds of demurrer here under consideration was a broadside against an entire paragraph, and did not specifically and separately attack the particular allegations as to which more information was desired. The whole of neither paragraph was subject to be stricken for the reasons stated. The court did not err in overruling these grounds of special demurrer. *Southern Ry. Co.* v. *Phillips,* 136 *Ga.* 282 (71 S. E. 414); *Mendel* v. *Converse,* 30 *Ga. App.* 549 (11) (118 S. E. 586). Since the plaintiffs had installed water mains, hydrants and tanks, and had thus afforded the means of conveying water to their plants from the original system without extra cost to the defendant, these facts should be taken into consideration upon the issue as to the reasonableness of the rates. These paragraphs could also be said to contain proper matter of inducement, explanatory of the cause of action relied on. It does not conclusively appear that the allegations here made were intended solely as a foundation for a claim that the defendant should furnish water to the plaintiffs free of charge. In fact, the plaintiffs did not make this precise contention anywhere in the petition.

The defendant demurred to paragraph 17 of the petition, "and the various subdivisions thereof, on the grounds that the allegations therein are mere conclusions of the pleader, unsupported by any fact set forth in the petition." We apply to this demurrer what was said of the demurrers to paragraphs 8 and 9. The whole of the seventeenth paragraph with its various subdivisions was not subject to be stricken upon the grounds stated in the demurrer. It is unnecessary to examine or state the other grounds of special demurrer, either as overruled or as sustained. The rulings of the trial judge were in each instance in accordance with the principles stated in the preceding division, and can not be held erroneous upon any ground taken.

■ Under the pleadings and the evidence, the only substantial issue before the trial judge at the hearing for injunction was as to the reasonableness of the rates declared by the defendant. We will not repeat the evidence upon this question. The evidence in relation thereto was in conflict, and we can not hold as a matter of law that the trial judge abused his discretion in granting the interlocutory injunction.

*Judgment affirmed on both bills of exceptions. All the Justices concur.*