AVEN *et al. v.* STEINER CANCER HOSPITAL INC. *et al.*

No. 12815.   October 19, 1939.

128

*Arnold, Gambrell & Arnold,* for plaintiffs.

*Hirsch & Smith, M. E. Kilpatrick, Herbert J. & Joseph F. Haas,*

*J. C. Savage, C. S. Winn, J. C. Murphy,* and *E. L. Sterne,* for defendants.

BELL, Justice. (After stating the foregoing facts.)

■ While there was only one original plaintiff, others intervened, and the term *plaintiffs* will be used. The plaintiffs alleged, and submitted evidence to the effect that the property in question has a rental value approximating $300 per month; and it is argued in their behalf that the contract virtually makes a donation to a private corporation of this sum monthly, amounting to more than $100,000 for the entire thirty-five years. Hence it is contended that the proposed contract, if carried into effect, would violate the constitutional provision found in the Code, § 2-5401, quoted above. We can not sustain this contention. We do not regard the proposed agreement as embracing anything prohibited by this provision of the constitution. It does not purport to make the City of Atlanta a stockholder of the other contracting corporation, nor will it appropriate money for or lend its credit to such corporation. From the recitals in the lease and the allegations of the petition, the agreement is intended as a contract of rental; and whether valid or invalid as such, it does not involve a donation to the hospital corporation. This is true even though, as shown later in this opinion, the lease, if valid, would constitute a virtual appropriation for the benefit of the poor. In this view, we need not determine whether, if the contract did in fact contemplate a donation to the hospital corporation, it would be saved from the constitutional prohibition by the exception relating to "purely charitable purposes;" nor is it necessary to decide whether the lessee corporation should be treated as a purely charitable institution. Nor will the agreement, as the plaintiffs contend, violate either of the constitutional provisions contained in the Code, §§ 2-6401, 2-5301, quoted above. In view of the purpose of the contract to provide for the poor, the case differs on its facts from *Covington & Macon Railroad Co.* v. *Athens,* 85 *Ga.* 367 (11 S. E. 663), *Town of Adel* v. *Woodall,* 122 *Ga.* 535 (6) (50 S. E. 481), and *Tedder* v. *Walker,* 145 *Ga.* 768 (3) (89 S. E. 840), which involved donations by municipalities for purposes held to be unauthorized; *Atlanta Chamber of Commerce* v. *McRae,* 174 *Ga.* 590 (163 S. E. 701), in which there were proposed donations by a county for civic purposes; and *Vincent* v. *MacNeill,* 186 *Ga.* 427 (198 S. E. 68), in-

volving a contract which a county was not authorized to make. Nor will the agreement violate the provision of the constitution which prohibits a municipality from incurring any new debt, except for temporary loans for casual deficiencies, without the assent of two thirds of the qualified voters thereto. Code, § 2-5501. No promise is made by the city to pay or deliver any sum of money or other thing of value at any time. Accordingly, the contract will not create any debt against the municipality.

■ It is contended that "Steiner Cancer Hospital Inc." is not a corporation, and is not an entity capable of contracting, because the petition for incorporation was not advertised before the purported grant of its charter, as required by the Code, § 22-303. By an act approved January 28, 1938 (Ga. L. Ex. Sess. 1937-1938, p. 214), the law as to chartering corporations was revised and amended in several respects. Under section 3 of that act, advertisement of the petition for charter is still required, but "it shall not be necessary that any or all of the advertisements appear before the petition is granted." The caption of the act is as follows: "An act authorizing the chartering and empowering of corporations, and amending, revising, and perfecting the present corporation laws of the State; to repeal section 22-308 of the Code of Georgia of 1933, as amended by an act approved March 15, 1935 (Georgia Laws 1935, pages 108-9), and to repeal said last-mentioned act and to insert a new section in lieu' thereof; and for other purposes." Section 42 provides: "A corporation not organized for pecuniary gain or profit and without capital stock may be incorporated under the terms of this act, and such corporation need not comply with the provisions of this act relating to capital stock and other matters not pertinent to its organization." It is insisted that this section is void under the provision of the constitution that "No law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made." Code, § 2-1817. It has been held in several decisions by this court that an act which does not purport to repeal or amend any particular law or statute is not within the constitutional prohibition here invoked. *Crisp* v. *Head*, 187 *Ga.* 20 (2), 24 (199 S. E. 219), and cit. There is no merit in the con-

**138**

tention that the former law as to advertisement was not amended by the act of January 28, 1938. Under the latter statute, previous advertisement was unnecessary.

■ Section 1 of the charter of the City of Atlanta empowers the city to "purchase, hold, receive, enjoy, possess, and retain . . in perpetuity, or for any term of years, any estate or estates—real or personal—lands, tenements, hereditaments, of what kind or nature soever, . . to use, manage and improve, sell and convey, rent or lease, and have the like powers over property hereafter acquired." (Ga. L. 1874, p. 116.) Under this provision, the municipality, acting in its proprietary capacity, would be authorized to rent or lease the real estate in question for any valid and sufficient consideration within the objects of its incorporation. *Adams* v. *Rome*, 59 *Ga.* 765; *Mayor &c. of Athens* v. *Camak*, 75 *Ga.* 429; *Bacon* v. *Walker*, 77 *Ga.* 336; *Hirsch* v. *Brunswick*, 114 *Ga.* 776 (40 S. E. 786); *Byrd* v. *Alma*, 166 *Ga.* 510 (143 S. E. 767). Section 15 of the charter provides: "The said mayor and general council shall have full power and authority to pass all by-laws and ordinances respecting . . care of the poor, . . and every other by-law, regulation, and ordinance that may seem to them proper for the security, for the peace, health, order, and good government of said city." Except as otherwise limited by law, it is permissible, under this provision, for the city to make a contract with another person or corporation, under the terms of which the latter will "care for the poor," medical and surgical treatment included. The charter as written does not limit the dispensing of such relief either to direct donation or to personal administration by officers or agents of the municipality, but the city can perform this function "in every reasonable way, and by the use of all reasonable means," within the constitution and other laws of the State. *Bennett* v. *LaGrange*, 153 *Ga.* 428, 434 (112 S. E. 482, 22 A. L. R. 1312); Tucker *v.* Virginia City, 4 Nev. 20; Thomas *v.* Mason, 39 W. Va. 526 (20 S. E. 580, 26 L. R. A. 727); Town of Hamden *v.* New Haven, 91 Conn. 589 (101 Atl. 11, 3 A. L. R. 1435); St. Louis Hospital Association *v.* St. Louis, 15 Mo. 592; 48 C. J. 441, 541, §§ 20, 251; 21 R. C. L. 708, 711, § 10. The agreement under consideration contemplates a contract with another corporation for care of the poor in respect of medical and surgical treatment for specified afflictions. Where the city elects

to care for the poor by contracting for the services of another, it is not essential that the other contracting party shall be a charitable institution; and therefore it is immaterial in this case that the lessee, Steiner Cancer Hospital Inc., may intend to serve pay patients. Nor is it here needful to inquire about the disposition of the fees expected from such patients. Such a contract, it seems, would be invalid if made with a religious sect, which is itself aided directly or indirectly thereby. *Bennett* v. *City of LaGrange,* supra.

■ The *agreement* provides that the board of directors of the hospital corporation, the lessee, shall be limited to five members, consisting of the mayor, two members of the general council of the City of Atlanta, to be selected by that body, and two members to be selected from the trustees of the Albert Steiner estate. The *charter* of the hospital corporation provides for a similar board, but further declares that in the management of the business of the corporation there shall be required the affirmative vote of four fifths of all the directors. It is insisted that the city officers thus designated could not act in behalf of the city as a governmental body, and that whatever action they might see fit to take would constitute a mere attempt to exercise duties which could not be delegated by the municipal authorities, especially in view of the charter provision as to affirmative vote of four fifths of all the directors. We can not agree that the contract would be invalid merely because the municipality, in its governmental capacity, may have no control over the directorate or management of the lessee corporation. As stated above, the city under its charter may care for the poor indirectly by contracting for the services of another, and is not limited to its own officers or agencies. If this is a correct conclusion of law, as we think it is, the city is then authorized, subject to other limitations of law, to enter into such a contract with any corporation having appropriate charter power, even though it may in its governmental capacity have no control whatever over such corporation, and is dependent solely upon the contract and the remedies provided by law, with respect to its performance or breach.

■ We are of the opinion, however, that the agreement is subject to the objection that it violates the rule that "One council may not by an ordinance bind itself or its successors, so as to prevent free legislation in matters of municipal government." Code,

§ 69-202. This rule is not of statutory origin, and is not peculiar to Georgia. It is a codification of a principle stated in *Williams v. West Point,* 68 *Ga.* 816, which is applicable generally to legislative or governmental bodies. As indicated above, section 15 of the charter of the city provides that "The mayor and general council shall have full power and authority to pass all by-laws and ordinances respecting . . care of the poor." This provision merely confers authority. It is not a command. Contrast *McClatchey* v. *Atlanta,* 149 *Ga.* 648 (101 S. E. 682). Accordingly, the city is not actually required thereby to furnish to the poor any relief or assistance whatever; and the question whether it will do so and to what extent is a matter for determination from time to time by the governing authorities. Since the charter in this respect is not mandatory, each city council, present and future, will have a discretion in the matter. The evidence for the plaintiffs tended to show that the property in question has a rental value of $300 per month, and there was no evidence to the contrary. Under the record, therefore, it must be taken that the use of the property is not without some value. Thus, while the lease does not amount to an appropriation of money, it does attempt to appropriate a property right of substantial yearly value for the benefit of the poor, continuously for the period of thirty-five years. On the general subject of appropriations by the City of Atlanta, see *McElroy* v. *Hartsfield,* 185 *Ga.* 264 (194 S. E. 737). It has been held that the furnishing of aid or assistance to the poor is a "governmental function" (Wood *v.* Boone County, 153 Iowa, 92, 133 N. W. 377, 39 L. R. A. (N. S.) 168, Ann. Cas. 1913D, 1070), and that questions as "to what extent, under what circumstances, at what place and by what agencies poor persons shall be relieved at the expense of the public, are all purely legislative questions." Patrick *v.* Baldwin, 109 Wis. 342 (85 N. W. 274, 53 L. R. A. 613, 616). We consider these rulings sound, and directly in point.

While similar characterization of the matter of caring for the poor is not found in any Georgia decision, the same principle was expressed by this court in *Justices* v. *Chapman,* 16 *Ga.* 89 (2), 94. In that case, the court, in referring to support of the poor by the inferior court, said: "Our legislation only declares that 'the inferior courts shall have power to inquire into the circumstances of the poor, bind out orphans, appoint guardians, and appoint

overseers of the poor; and for this purpose, shall levy a tax.' . . To the inferior court a wide discretion, in the premises, is thus left. They are to inquire into the circumstances of the poor, to determine who shall be considered and treated as a pauper, and whether or not he or she shall become chargeable to the county." The court further stated that a person would therefore not be "chargeable to the county until the inferior court has given their sanction," and by some act "fixed this *status.*" It should be noted also that, as applied to the matter in hand, the municipal charter speaks only of legislation, conferring authority to pass all *by-laws and ordinances* respecting care of the poor. Seemingly, therefore, the matter is fixed by the charter itself as one dependent on *legislative* action. The language is similar to that construed in *Justices* v. *Chapman,* supra, not imposing a duty, but merely granting authority, and it is found in the general-welfare clause of the city charter. Other decisions by this court relating to governmental functions clearly show that the matter here is one of municipal government. The governmental functions of a municipality are those conferred or imposed upon it as a local agency, to be exercised not only in the interest of its inhabitants, but in promotion of the public good or welfare, as affecting the public generally. It includes the public peace, health, safety, and morals of the general public, and other similar public interests. *Love* v. *Atlanta,* 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. R. 64); *City Council of Augusta* v. *Little,* 115 *Ga.* 124 (41 S. E. 238); *Watson* v. *Atlanta,* 136 *Ga.* 370 (71 S. E. 664); *Mayor &c. of Savannah* v. *Jordan,* 142 *Ga.* 409 (83 S. E. 109, L. R. A. 1915C, 741, Ann. Cas. 1916C, 240); *Cornelisen* v. *Atlanta,* 146 *Ga.* 416 (91 S. E. 415); *Mayor &c. of Savannah* v. *Jones,* 149 *Ga.* 139 (2) (99 S. E. 294); *City of Warrenton* v. *Smith,* 149 *Ga.* 567 (101 S. E. 681); *Miller* v. *Macon,* 152 *Ga.* 648 (110 S. E. 873). Care of the poor relates not only to distress of those directly benefited, nor is it a matter of purely local concern. It is a public responsibility, relating to society in general, and may directly affect the peace, health, morals, and security of the public at large. See 21 R. C. L. 713; 43 C. J. 182, § 179.

While the city would be authorized to lease its property for a period of years upon a valid consideration, acting for that purpose in its proprietary capacity, such is not the effect of the agree-

ment under consideration. As tending to distinguish between governmental and business or proprietary action by a municipality, see Code, § 69-301; *Wright* v. *Augusta*, 78 *Ga.* 241 (*a*) (6 Am. St. R. 256); *Mayor &c. of Washington* v. *Faver*, 155 *Ga.* 680, 686 (117 S. E. 653); *City of Griffin* v. *Griffin Chero-Cola Bottling Co.*, 35 *Ga. App.* 779 (134 S. E. 812); *Caruthers* v. *Hawkinsville*, 42 *Ga. App.* 476 (156 S. E. 634); City of Vincennes *v.* Citizens Gas-Light &c. Co., 132 Ind. 114 (31 N. E. 573, 16 L. R. A. 485.); McBean *v.* Fresno, 112 Cal. 159 (44 Pac. 358, 31 L. R. A. 794, 53 Am. St. R. 191); Illinois Trust & Savings Bank *v.* Arkansas City, 76 Fed. 271 (34 L. R. A. 518); Omaha Water Co. *v.* Omaha, 147 Fed. 1 (12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614); Picket Publishing Co. *v.* Board of County Commissioners, 36 Mont. 188 (92 Pac. 524, 13 L. R. A. (N. S.) 1115, 122 Am. St. R. 352, 12 Ann. Cas. 986); City of Biddeford *v.* Yates, 104 Me. 506 (72 Atl. 335, 15 Ann. Cas. 1091); 43 C. J. 179-185, §§ 177-180; 19 R. C. L. 893, § 193. It is true, the agreement does not purport to establish any general policy as to aiding the poor, or prevent other assistance from time to time in the discretion of the city council. It nevertheless grants the use of valuable property, as consideration for stated benefits to the poor, and is thus in effect a continuing appropriation for the use of the poor, for the term of years stated; whereas future councils should be free to determine whether any expenditures should be made for that purpose; and if so, upon what terms and conditions, to what extent, and in what circumstances. If the agreement should be executed and given effect, it would necessarily prevent free legislation in regard to all of these matters concerning care of the poor. The proposed undertaking will not merely grant a lease on the city's property; it will bargain away governmental discretion. In *Macon Consolidated Street R. Co.* v. *Macon*, 112 *Ga.* 782 (2) (38 S. E. 60), it was held: "A municipal corporation can not make a valid contract abrogating or restricting its legislative or discretionary power." For other cases referring to the rule against preventing free legislation in matters of municipal government, see *Williams* v. *West Point*, supra; *Macon Railway & Light Co.* v. *Macon*, 136 *Ga.* 797 (2) (72 S. E. 159); *Neal* v. *Decatur*, 142 *Ga.* 205 (82 S. E. 546); *South Georgia Power Co.* v. *Baumann*, 169 *Ga.* 649 (2) (151 S. E. 513); *Washington Water & Electric Co.* v. *Pope Manufactur-*

*ing Co.,* 176 *Ga.* 155, 163 (167 S. E. 286) ; *City Council of Augusta* v. *Richmond County,* 178 *Ga.* 400 (173 S. E. 140) ; *Cannon* v. *Americus,* 11 *Ga. App.* 95 (74 S. E. 701).

We do not mean to say that every contract or undertaking entered into in behalf of a municipality on authority of its council, and involving a governmental function, must be considered as void as to any extension whatever beyond their own tenure. While the question is not involved in the present case, it may be that the rule should be so applied as to allow, in case of necessity, reasonable overlapping to avoid suspension or disruption of municipal government during periods of change in administration. The following authorities might shed some light on this question, whether or not the contracts involved related to governmental functions: Manley *v.* Scott, 108 Minn. 142 (121 N. W. 628, 29 L. R. A. (N. S.) 652) ; Jacobberger *v.* School Dist., 122 Ore. 124 (256 Pac. 652, 655) ; Gulf Bitulithic Co. *v.* Nueces County (Tex. Com. App.), 11 S. W. (2d) 305 (9), 313; Tate *v.* School Dist., 324 Mo. 477 (23 S. W. 2d, 1013, 70 A. L. R. 771; 44 C. J. 88.

In *Horkan* v. *Moultrie,* 136 *Ga.* 561 (71 S. E. 785), it was said: "All legislative bodies are limited in their legal capacity in such a manner as not to deprive succeeding bodies of the right to deal with matters involving the same questions as they may arise from time to time in the future, and as the then present exigencies may require. The weight of authority sustains the doctrine that a municipal corporation may make a valid contract to continue for a reasonable time beyond the official term of the officers entering into the contract for the municipality. . . We have found no case, however, that would tend to support a contract made by a city council in behalf of the municipality to furnish water indefinitely to one of its citizens in consideration of his permitting it to lay a sewer through his land. Succeeding councils would necessarily have the power, we think, to change the water rates from time to time as circumstances might require or justify, in order to obtain sufficient revenue to maintain its waterworks system on the one hand, and, on the other, in order to serve all its patrons at reasonable rates and on equal terms. To allow one council to legally bind the city by a contract of the kind here in question might so tie the hands of its successors as to result in great in-

jury to the municipality and to the public. . . Power in a municipality of making and changing, by ordinance, water rates from time to time, whenever necessary to protect the city in its revenues and to enable it to furnish to all on equal terms and at reasonable rates, is a legislative or governmental power, and therefore can not be legally bargained or bartered away by one council so as to forever deprive succeeding councils of the right to exercise it." It was further said that what could not be done by ordinance could not, of course, be done by contract. We cite this case because it refers to legislative or governmental authority, although the power to fix and determine water rates was the particular matter there under consideration. The decision is not inapplicable because it dealt with a contract for an indefinite term. The rule is not limited to either indefinite or perpetual terms. Whether or not the present agreement might have been sustained if it had been so made as to continue for only a reasonable time during or beyond the terms of the officers who undertook to authorize it, we think it should be said as a matter of law that the period of the lease will involve an overlapping for an unreasonable time with respect to the rule that one city council can not bind itself or its successors in matters of municipal government. The period is thirty-five years—more than a third of a century, and half the allotted time of man. Manifestly it would not be a reasonable application of the rule to say that one city council may bind itself and its successors *in matters of municipal government* for any such period.

Without reference at this point to applicability of the rule in other instances, we think it may be helpful to mention a few additional things which the present agreement is *not:* It is not a contract for the construction of a hospital or other building to be used from time to time for charitable or other purposes, according to the discretion of each city council; and it is neither an emergency measure adopted in case of pestilence or epidemic, nor is it a general health measure. It is an undertaking solely for the benefit of the poor, or some of the poor; and although the general subject is within the authority of the city council, the particular agreement must be declared unlawful as exceeding that authority, under the rule invoked. It involves a governmental function none the less because it may seek to benefit only some

of the poor in limited respects, instead of all of the poor in a more general way. It is argued in effect, however, that the city, under the constitution and laws of the State, and its charter, would have been authorized to make an outright donation of the property in question for the benefit of the poor; and that, if so, it could do the lesser thing of executing the instant rental contract in reference thereto. Whether or not the lease, being for more than five years, might, if valid, convey an interest in realty (Code, § 85-801), and whether or not the municipality could have made an outright donation of the entire estate in the property, the lease can not be construed otherwise than as an executory contract containing covenants on the part of the lessee, to be performed in the future in reference to the poor, with simultaneous enjoyment of the property as consideration for the service to be rendered. As related to futurity on both sides, note especially the provision as to cancellation in case of breach. Since, as we have shown, the matter of caring for the poor is, under the city charter, a matter for municipal government, such an executory contract, intended to be of force for the period of thirty-five years, can not be upheld as an executed donation or as a·proposed immediate donation, whether or not, if it were such in fact, it might be sustainable.

The case is distinguished by its facts from *Mayor &c. of Macon* v. *Bibb County,* 138 *Ga.* 366 (75 S. E. 435). As was said in that case, the resolution of the county with its acceptance by the city was not strictly a contract, because the city did not agree to send all or any of its smallpox patients to the county hospital, but it was "more of an arrangement in the nature of a working basis between the authorities of the two sanitary districts," being a "continuing offer" by the county to care for both county and city·patients on a co-operative plan. *The arrangement was subject to termination at the will of either party on thirty days notice.* The city sent its smallpox patients to the county hospital while the offer was still outstanding, but later refused to pay its part of the expense, in accordance with the resolution. It was held that "the city will not be relieved from the payment of its proportionate expense on the ground that the arrangement of the city and county to combine the pest-houses is void, because, as it is contended, its effect is to create a debt extending beyond the

current year, and to bind the successors in office of the city." A mere statement of the facts is a sufficient differentiation.

The decision in Le Bourgeois v. New Orleans, 145 La. 274 (82 So. 268), does not point, except perhaps faintly, to a different conclusion. The question here discussed was apparently not raised in that case. Furthermore, it appears from the decision that the laws of the State and the provisions of the city charter were different. All of the cases cited in the briefs, both local and foreign, have been given careful consideration. None appear to be more closely in point than those expressly mentioned herein.

It is further insisted for the defendants that the original plaintiff, a physician, did not come into equity with clean hands. This contention is based upon his admission that he had published a statement to the effect that everything would be harmonious if Steiner Clinic would confine its activities to treatment of the poor of the City of Atlanta, and admit patients only upon certificate of a physician that they were suffering from cancer, or were suspected of having cancer, and were unable to pay for medical service. This statement may tend to show ulterior motive, but it does not show any unfair or unlawful conduct as to the rights of the other parties respecting the subject-matter of the litigation, and is not enough to defeat the action. Code, § 37-104; *Town of Adel* v. *Woodall,* 122 *Ga.* 535 (6), 539 (50 S. E. 481); *Atlanta Association of Fire-Insurance Agents* v. *McDonald,* 181 *Ga.* 105 (2) (181 S. E. 822); *Gulf Oil Corporation of Pennsylvania* v. *Suburban Realty Co.,* 183 *Ga.* 847 (2), 853 (190 S. E. 179).

■ There is no merit in the contention that the plaintiffs as taxpayers did not show sufficient interest and injury to support the action. *Blake* v. *Macon,* 53 *Ga.* 172; *Keen* v. *Waycross,* 101 *Ga.* 588 (3) (29 S. E. 42); *Wells* v. *Ragsdale,* 102 *Ga.* 53 (7) (29 S. E. 165); *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (36 S. E. 247); *Mitchell* v. *Lasseter,* 114 *Ga.* 275 (4) (40 S. E. 287); *Tolbert* v. *Long,* 134 *Ga.* 292 (67 S. E. 826, 137 Am. St. R. 222).

It is also a doubtful question whether the clause of the contract purporting to authorize the directors of the lessee corporation to adopt "rules and regulations for determining those who qualify as the poor of the city" does not attempt an unlawful delegation of governmental discretion as distinguished from an

administrative or ministerial duty; but in view of what has been said, no decision upon this question is necessary.

For the reasons stated, the judge erred in refusing an injunction. However worthy and important the proposed enterprise may seem to be, we as a court must put out of view all but its legal phases. The construction and application of the law being our sole authority and function, our decision can not be permitted to turn on any other question.

*Judgment reversed. All the Justices concur, except*

JENKINS, J., who dissents from the conclusion reached in division 5 of the opinion, and from the judgment of reversal.